In re the **MARRIAGE OF Marian Lea BORNSTEIN and Lloyd Bornstein.**

**Upon the Petition of Marian Lea Bornstein,
Petitioner-Appellee/Cross-Appellant,**

**And Concerning Lloyd Bornstein,
Respondent-Appellant/Cross-Appellee.**

No. 83–891.

Court of Appeals of Iowa.

Sept. 25, 1984.

James W. Affeldt of Eels, Blackstock, Affeldt & Harms, Cedar Rapids, for respondent-appellant/cross-appellee.

Mary K. Hoefer, Iowa City, and Phillip D. Seidl of Tom Riley Law Firm, Cedar Rapids, for petitioner-appellee/cross-appellant.

Heard by DONIELSON, P.J., and SCHLEGEL and HAYDEN, JJ.

DONIELSON, Presiding Judge.

Respondent husband appeals and petitioner wife cross-appeals from the decree dissolving the parties' marriage. On appeal, respondent husband asserts (1) that his alimony obligation is excessive; (2) that the trial court should have provided for the alimony obligation to terminate upon his death; (3) that the property division is inequitable; and (4) that the trial court should not have directed him to pay monthly support for the parties' son but should instead have set up a child support trust fund, with contributions from both parties. On cross-appeal, petitioner wife asserts (1) that her alimony award is inadequate; and (2) that

the property division is inequitable. We affirm as modified.

Petitioner Marian Lea Bornstein and respondent Lloyd Bornstein were married in 1949. They have four children, three of whom are now grown. The fourth, Eric, was thirteen years old at the time of trial. During the marriage, Marian was primarily a homemaker; she did, however, have several part-time jobs. At the time of trial, she was working as a sales clerk and earning a net income of approximately $540 per month. Lloyd is permanently and totally disabled due to a nervous condition. His income from civil service and veteran's disability payments is $1,797 per month. He also receives $266 per month from a real estate installment contract.

The trial court directed Lloyd to pay alimony to Marian in the amount of $300 per month. The court also awarded Marian custody of Eric, and directed Lloyd to pay $200 per month child support. In reaching this decision, the court rejected Lloyd's request that a child support trust be set up with contributions from both parties. Additionally, Marian was awarded her car, a mobile home, the household goods in the mobile home except a massage chair, and her life insurance policies. Lloyd received the parties' lot, the real estate installment contract, an apartment building partnership, a car, a truck, two campers, a trailer, some cemetery lots, the household goods not awarded to Marian, and his life insurance policies. The trial court equally divided the parties' bank accounts, which totalled $72,744.96.

In ruling on post-trial motions, the trial court directed that Lloyd's alimony obligation should terminate on Marian's remarriage or death, and that Marian should receive 65 percent rather than 50 percent of the bank account funds. Lloyd has appealed and Marian has cross-appealed.

■ Our review of this equitable proceeding is de novo. Iowa R.App.P. 4. While the findings of the trial court are not binding upon us, we view them with considerable weight. *In re Marriage of Burham*, 283 N.W.2d 269, 274 (Iowa 1979).

**I. Alimony.** Respondent asserts two arguments regarding the alimony provisions of the divorce decree. First he argues that the alimony obligation is excessive and Marian should only be awarded a minimal amount in order to keep the provision open for future modification. Petitioner argues that the amount awarded is entirely inadequate.

■ In considering the fairness of the alimony provision, we consider the factors listed in Iowa Code section 598.21(3). In doing so, it is apparent that there is no reason to disturb the amount of alimony awarded. The record reflects that Marian earns a net income of approximately $540 per month. We agree with the trial court that this income is not sufficient to maintain the standard of living comparable to that enjoyed during the marriage. Furthermore, there is little chance that her earning capacity will increase significantly in the future. Although the petitioner was employed on occasion during the marriage, her primary and full-time job has been as a mother and a homemaker. Furthermore, she has no post-high school academic or vocational training. We also believe that Lloyd is entirely capable of making the alimony payments provided for in the decree. His net income from disability payments and a real estate contract is approximately $1,843 per month. We agree with the trial court that this is sufficient to cover his monthly expenses of approximately $1,000 and to make alimony payments of $300 per month. Respondent argues that the trial court's determination does not take into consideration medical expenses he will incur as a result of his disability. However, the record reflects otherwise. The lower court specifically included extraordinary medical expenses in ascertaining Lloyd's total expenses. Should unforeseen expenses occur at some later date, that item can be handled at that time. However, it is inappropriate for this court to speculate as to the amount or probability of these additional expenses. Essentially, we conclude that the trial court properly considered Marian's needs as well

as Lloyd's ability to pay. We see no reason to increase or decrease the amount of alimony awarded. Thus, we affirm the trial court's decision in this respect.

■■■ Respondent also argues that the alimony provision should be modified to provide that it terminate upon his death. We agree. "In general, alimony payments are presumed to terminate upon the obligor's death, absent a provision in the decree requiring that the payments continue after such death." *In re Marriage of Hayne*, 334 N.W.2d 347, 351 (Iowa Ct.App. 1983). We see no reason to depart from this rule. As respondent points out, Marian was awarded a substantial amount of property. If she preserves and invests her cash assets wisely, we are confident she will be able to enjoy the standard of living to which she has grown accustomed, even if Lloyd predeceases her. Accordingly, we modify the decree to provide that the alimony obligation will cease upon Marian's remarriage or the death of either party.

**II. Property Division.** The respondent also contends that the division of property was inequitable. The property division ordered by the trial court resulted in Lloyd receiving 54 percent of the net marital property. His share of the property included 35 percent of the liquid assets. Lloyd contends that he should receive at least 50 percent of the liquid assets, since most of the marital property was acquired as a result of his monetary contributions. He further claims that he is entitled to the additional assets since the liquid assets were allegedly acquired from money received as a result of his disability. Marian counters with the argument that the property should have been more evenly divided.

■■■ Our analysis of the property division is governed by section 598.21(1) of the Iowa Code which codifies many aspects of our prior case law. A percentage division of the property is not statutorily sanctioned. Rather, the ultimate question is whether the distribution is equitable under the specified facts of the particular case. *In re Marriage of Callenius*, 309 N.W.2d 510, 511, 514 (Iowa 1981). Furthermore, we recognize that all economic aspects of the divorce decree must be viewed as an integrated whole. *In re Marriage of McFarland*, 239 N.W.2d 175, 179 (Iowa 1976).

■■■ Viewing the facts before this court in light of section 598.21(1), we conclude that the trial court's distribution of the property was equitable. We cannot agree with respondent's argument that he should receive more property because his income was used to purchase marital assets. This position ignores other relevant factors such as the length of the marriage and the value of Marian's homemaking contributions. Moreover, we cannot agree with Marian's argument that the property should have been more equally divided. It is well established that equality need not be achieved with mathematical exactness. *In re Marriage of Conley*, 284 N.W.2d 220, 223 (Iowa 1979).

Finally, this court is unpersuaded by respondent's argument that the liquid assets should be treated differently from other assets since they were allegedly acquired with disability benefits. Lloyd attempts to equate his disability benefits with worker's compensation or personal injury benefits. He cites to several cases from other jurisdictions which support the proposition that although personal injury settlements are subject to being divided as an asset of the marriage, the injured party is entitled to a greater share of the settlement. *See, e.g.*, *Mack v. Mack*, 323 N.W.2d 153, 154–55 (Wis.1982). Respondent also asserts that our decision in *In re Marriage of Butler*, 346 N.W.2d 45 (Iowa Ct.App.1984), is controlling. In *Butler*, this court recognized that the portion of worker's compensation proceeds which the husband made available to the marital unit for its unrestricted use constitutes marital property. *Id.* at 47. We further recognized that if the husband had retained sole control over the benefits, they would not be subject to property division. *Id.*

■■■ We do not agree with respondent's claim that veteran's disability benefits

should be treated in the same manner as personal injury or worker's compensation benefits. The case before this court is legally as well as factually distinct from *Butler* and the personal injury cases cited by Lloyd. Unlike personal injury or worker's compensation benefits, veteran's disability benefits are not considered to be property. The benefits are statutorily exempt from all claims other than claims of the United States, and are not divisible or assignable. 38 U.S.C. § 3101 (1982). In light of this, we cannot adhere to the principle that such benefits should be treated pursuant to our holding in *Butler*, which characterized worker's compensation benefits as property.

Furthermore, unlike *Butler*, the situation before this court does not involve a dispute as to the division of the actual benefits; Lloyd's disability benefits were *not* part of the property settlement. Rather, we are concerned with the division of liquid assets allegedly purchased using the veteran's disability benefits. In this respect, respondent argues that the benefits should retain their exempt status since they were used to acquire *liquid* assets. We recognize that respondent's argument may have some merit. In a case involving veteran's benefits, the United States Supreme Court held that such benefits retain their exempt status under section 3101 when they remain "subject to demand and use as the needs of the veteran for support and maintenance required." *Porter v. Aetna Casualty & Surety Co.*, 370 U.S. 159, 161, 82 S.Ct. 1231, 1233, 8 L.Ed.2d 407, 409 (1962). In other words, the exempt status remains intact when the funds retain the qualities of money, and have not been converted into permanent investments. *Id.*

We conclude, however, that it is unnecessary to address the applicability and effect of this test in the present fact situation. The record before this court simply does not support the conclusion that the liquid assets in question were acquired exclusively with income from veteran's disability benefits. Lloyd also receives civil service disability benefits as well as income from a real estate contract which may have funded the acquisition of these assets. Accordingly, we see no reason to disturb the trial court decree in this respect.

**III. Child Support.** Lloyd's final claim on appeal is that the trial court should have set up a child support trust fund with contributions from both parties. He reasons that this would ensure that both parties meet their individual obligation for Eric's support.

It is well-established that parents have a legal obligation to support their children. *In re Marriage of Fleener*, 247 N.W.2d 219, 221 (Iowa 1976). The obligation to support should be apportioned according to the ability of each parent to contribute. *In re Marriage of Heinemann*, 309 N.W.2d 151, 153 (Iowa Ct.App. 1981).

Our examination of the record convinces us that a trust fund is unnecessary in this particular fact situation. In *Neiderhiser v. Neiderhiser*, 254 Iowa 791, 119 N.W.2d 245 (1963), the supreme court approved a trust created for the purpose of providing child support. However, in *Neiderhiser*, the husband had been uncooperative in all states of the dissolution proceedings. *Id.* at 799–800, 119 N.W.2d at 250. The trust requested by the wife was the only real means of ensuring that the support obligation would be met. The record before this court does not reflect an unwillingness or inability of either party to meet the legal obligation of support. In light of this, we see no reason to create a trust. We therefore affirm the child support obligation as it was imposed by the trial court.

**IV. Attorney Fees.** Petitioner has requested attorney fees on appeal. In evaluating this request, we consider the needs of the petitioner, Lloyd's ability to pay, and whether Marian was obligated to defend the trial court's decision on appeal. *See In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa 1981). Upon consideration of these factors, we conclude that Marian

should be awarded appellate attorney fees in the amount of $750.00.

AFFIRMED AS MODIFIED.