In re the MARRIAGE OF Carolyn J. PHIPPS and Larry E. Phipps

Upon the Petition of Carolyn J. Phipps, Petitioner/Appellee/Cross-Appellant.

and Concerning Larry E. Phipps, Respondent/Appellant/Cross-Appellee.

No. 84–1884.

Court of Appeals of Iowa.

Oct. 29, 1985.

Barry S. Kaplan, of Fairall, Fairall & Kaplan, Marshalltown, for respondent/appellant/cross-appellee.

C.M. Manly, Grinnell, for petitioner/appellee/cross-appellant.

Considered by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

SACKETT, Judge.

Larry Phipps appeals from the trial court's refusal to modify his dissolution decree and award him custody of his daughter. Carolyn Phipps cross-appeals contending the trial court should have increased the child support awarded on modification and modified the decree to provide for cost of living increases and awarded her attorney fees.

The parties' marriage was dissolved in 1976 and custody of the parties' two minor children, Chris a son born in 1967 and Carrie a daughter born in 1972, was placed with Carolyn. In about 1980, Chris's custody was transferred to Larry by agreement of the parties.

Both parties remarried following the dissolution. Carolyn's second marriage was dissolved in 1983. Larry and his second wife live in Marshalltown with her three children and Chris. Carrie has at all times resided with her mother in Grinnell.

Larry seeks the change because he feels Carrie's emotional and intellectual development have been hindered in Carolyn's care and because he contends he and his current wife will more adequately meet Carrie's needs. The trial court after a lengthy hearing and after carefully considering the evidence determined Carrie should remain with her mother.

## I.

## WAS THE TRIAL COURT CORRECT IN FAILING TO MODIFY THE DECREE AND AWARD CARRIE'S CUSTODY TO LARRY?

Our review is de novo. We give weight to the fact finding of the trial court but will not abdicate our duty to review de novo. We determine the issues presented upon the facts disclosed of record. *Hobson v. Hobson*, 248 N.W.2d 137, 139 (Iowa 1976).

The first and governing consideration is the best interest of the child. *In re Marriage of Melton*, 256 N.W.2d 200, 205 (Iowa 1977). A person seeking a change of custody must show a superior claim, based upon an ability to minister to the child's needs more effectively than the custodial parents. The custody of children who are receiving proper care should not be disturbed in absence of cogent or compelling reasons. *In re Marriage of Deck*, 342 N.W.2d 892, 895 (Iowa App.1983).

With these principles in mind we examine the record before us. This cause comes to us with a lengthy record. Both parties introduced evidence from persons having some degree of expertise in the area of child development and inter-family relations. At the onset it is very clear to this court, as it was to the trial court and the experts testifying at trial, that Larry and Carolyn have failed to maintain any meaningful communication with each other with reference to the physical and emotional development of their two children. The record clearly reflects both parties share the blame for the lack of communication. The unfortunate fact is the parents' failure to communicate has put Carrie under considerable stress, and this has had a serious effect on Carrie's development. Carrie has experienced medical problems because of the stress, her attendance at school has

been below average, and her academic performance has been below her ability level.

Larry seeks to blame all of Carrie's problems on Carolyn's home environment. We, however, determine both parents are at fault. In *In re the Marriage of Melton*, 256 N.W.2d 200, 207 (Iowa 1977), the Iowa Supreme Court said, "If these parents are sincerely interested in the welfare of Bryan they will put their hostilities aside and strive to provide a loving environment." Those words apply to the parents here.

Larry basically contends Carrie's problems will be resolved if she lives with Larry and his current wife. Larry claims Chris had similar problems in his mother's home and that Chris has had a better attitude and academic performance since living with Larry. This fact is supported by the record. Chris testified and related that he is doing well in his father's home. He does not, however, feel Carrie should live with her father in part because he and Carrie have different personalities and Carrie would not relate to his father's home as he has.

The record reflects Larry's home is more elaborate. He and his current wife have a more structured and disciplined environment than Carolyn does. They are conscious and concerned parents.

We determine Larry has an excellent home and Carrie's needs would be met there. However, this alone is not sufficient to show he has a superior ability to minister to his daughter's needs. *See In re Marriage of Melton*, 256 N.W.2d at 207. We also consider the following:

1. Carrie has lived with her mother since infancy. There is a strong bonding. Carrie professes to have an excellent relationship with her mother.

2. Carrie is a happy child. She has many friends. She likes living in Grinnell and is adjusted in school there.

3. Carrie has testified she does not like her father's current wife, nor does she wish to live in her father's home. While deciding custody is more complicated than asking children what parent they want to live with, Carrie's preference is relevant and cannot be ignored. *In re Marriage of Gravatt*, 371 N.W.2d 836, 840 (Iowa App.1985).

4. Carrie has lived alone with her mother for some time. If sent to her father's home, she would share parental attention with several children including a stepsister two years her senior.

5. Carrie has been adequately fed, clothed, and supervised in her mother's home.

Carolyn has had some problems precipitated in part by tragic circumstances including the suicide of her sister. Carolyn's own expert testified Carolyn exhibited some lack of consistency in parenting. Parenting and child-rearing is not an exact science. It is a twenty-four hour a day job. A parent is not expected to perform perfectly at all times. The stress and problems of everyday living create situations to which parents and children must adjust. A child's reactions to certain situations are not always predictable. A parent who has been granted sole custody or physical care must not be under constant scrutiny and must feel free to function as a parent within normal bounds.

Larry must show that any changed circumstances were permanent and continuous in nature and not contemplated by the court when the dissolution decree was entered. *See In re Marriage of Mikelson*, 299 N.W.2d 670, 671 (Iowa 1980).

We commend Larry and his wife for their interest in this child and their concern for her care. We fail to find, however, that Larry has met the burden necessary to support a modification and affirm the decision of the trial court leaving custody with Carolyn.

## II.

## WAS THE MODIFICATION OF SUPPORT ORDER BY THE TRIAL COURT SUFFICIENT?

Joined with the hearing on the application for modification of custody had been a

hearing on an earlier application Carolyn had filed. Carolyn's application sought an increase in child support and a provision in the decree for a cost-of-living adjustment.

■ The trial court increased child support from $100 a month to $175 a month but refused to provide for a cost-of-living clause. Carolyn, on her cross-appeal, contends the increased order by the trial court was not sufficient and she should have a cost-of-living increase adjustment clause. She also asks that the trial court's order be modified to provide the ordered increase commence on the date she filed her application for modification rather than, as the trial court determined, from the date of the decree of modification.

Larry testified he expects to net $50,000 to $75,000 from his chiropractic practice in 1985. In addition thereto, he has income from other investments. Carolyn has net income of $12,000 annually.

We agree with the trial court that Carolyn has shown a material change in circumstances and the child support should be increased. *See Spaulding v. Spaulding*, 204 N.W.2d 634, 635 (Iowa 1973). We do not, however, find the ordered increase to be sufficient.

The record shows the consumer price index had increased 87.8 per cent between the time of the decree of dissolution and the decree of modification. We take judicial notice of the reduced purchasing power of the dollar when considering child support payments. *Spaulding* at 636. We also weigh the factor of the increased needs of a growing child. *Dworak v. Dworak*, 195 N.W.2d 740, 742 (Iowa 1972). We also consider that Larry is supporting Chris without contribution from Carolyn. Both parents have an obligation to support their children although not necessarily equally but proportionately according to their ability and circumstances. *See In re Marriage of Byall*, 353 N.W.2d 103, 108 (Iowa App.1984).

Considering all factors, we modify the award to $300 per month and further modify the trial court's order by providing the increase shall commence in May 1983 the month following the filing of the application. *See Willcox v. Bradrick*, 319 N.W.2d 216, 219 (Iowa 1982); *In re Marriage of Olive*, 340 N.W.2d 792, 795 (Iowa App. 1983).

## III.

## DID THE TRIAL COURT PROPERLY DENY A COLA CLAUSE?

Carolyn contends she should have a cost-of-living adjustment provision referred to as COLA in her decree and directs us to *In re Marriage of Stamp*, 300 N.W.2d 275, 280 (Iowa 1980). In *Stamp* the supreme court remanded a support order to the trial court for the insertion of such a clause. Both parties in *Stamp* were employed by the University of Iowa and their employment history was stable with gradual salary increases instead of wide fluctuations. The noncustodial parent's gross salary was readily obtainable.

■ Here, we have two parties who are self-employed. Their income is subject to numerous and substantial variations. We determine the trial court was correct in refusing to include a COLA clause.

## IV.

## SHOULD CAROLYN BE AWARDED ATTORNEY FEES?

Carolyn contends the trial court erred in refusing her request for attorney fees at the trial court level and requests attorney fees on appeal. In a proceeding to modify a dissolution decree the court may award reasonable attorney fees. Iowa Code § 598.36.[1] Attorney fees here are not recoverable as a matter of right, but rest within the court's discretion and depend upon one spouse's financial needs and the other spouse's ability to satisfy them. *In re Marriage of Estlund*, 344 N.W.2d 276, 281 (Iowa App.1983).

1. Effective July 1, 1984.

■ Considering Larry's superior earning capacity and the fact he was not successful in resisting Carolyn's application for increased support nor was he successful in his application for custody modification, we determine Carolyn should have been awarded attorney fees in the trial court and should have them on appeal. Carolyn's attorney claims he spent fifty-five hours in the trial court and sixteen hours on appeal. Without commenting upon the amount of fees Carolyn should pay, we determine only what portion should be paid by Larry. We modify the trial court's award to provide he shall pay $1,500 for Carolyn's fees on the trial court level and order an additional $500 toward her attorney fees in connection with this appeal.

Costs on appeal are taxed to Larry.

AFFIRMED AS MODIFIED.