In re the MARRIAGE OF Alvin BEHN and Barbara Behn.

Upon the Petition of Alvin Behn, Appellant,

and

Concerning Barbara Behn, Appellee.

No. 85–1231.

Supreme Court of Iowa.

April 16, 1986.

Richard D. Zahasky, Decorah, for appellant.

Calvin R. Anderson and Andrew F. Van Der Maaten of Strand, Anderson & Wilmarth, Decorah, for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, CARTER and WOLLE, JJ.

WOLLE, Justice.

Both Alvin Behn and his wife Barbara have appealed from the decree which dissolved their marriage of ten years duration. Alvin challenges the joint custody arrangement through which Barbara has physical custody of the parties' three minor children in all but the summer months. Both parties challenge assorted economic provisions in the decree. We review de novo but pay close attention to the trial court's credibility determinations and give considerable weight to its findings of fact. *In re Marriage of Vrban,* 359 N.W.2d 420, 423–24 (Iowa 1984); *In re Marriage of Bornstein,* 359 N.W.2d 500, 502 (Iowa Ct. App.1984); Iowa R.App.P. 14(f)(7). We conclude that the trial court on balance fairly and equitably resolved the issues disputed by the parties and now presented for our review. We affirm, but we require Alvin to pay part of Barbara's attorney fees on appeal.

I. *Custody of the Children.*

The trial court determined that forty-four year old Alvin and thirty-four year old Barbara were both loving parents who would give priority to the welfare of the three children of their marriage—Lori nine, Jennifer four and Malinda two. The court noted that Alvin had been employed outside the home throughout the marriage, while Barbara had remained at home devoting most of her time to caring for their children and Barbara's fifteen year old daughter, Audra Sue Nesset. Barbara had moved to Vancouver, Washington, with the three children at the time the parties separated, while Alvin remained at their rented farm home north of Decorah. The trial court established a joint custody arrangement through which Barbara would have physical care of the children during the school year and Alvin physical care during the summer months, with each parent granted liberal rights to visit the children while they were in the physical care of the other.

Alvin contends that he should have been awarded sole custody of the three minor children, arguing that Barbara disrupted the family and evidenced very poor parental judgment when she suddenly moved out of state. Both parties rely on expert testimony to support their opposite views regarding what custodial arrangement would be in the best interest of these minor children.

We agree with the trial court's decision to provide for joint custody rather than placing the children in the sole custody of either parent. Iowa Code section 598.41(3) (1985) lists the several factors which a court must consider in deciding whether joint custody is in the best interests of the affected minor children. The legislature has unequivocally expressed its preference for joint custody in Iowa Code section 598.41(2) (1985), which provides in part:

> If the court does not grant joint custody under this subsection, the court shall cite clear and convincing evidence, pursuant to the factors in subsection 3, that joint

custody is unreasonable and not in the best interest of the child to the extent that the legal custodial relationship between the child and a parent should be severed.

We have explained:

> Joint custody is preferred because, properly tailored to the parties' circumstances, joint custodial arrangements will often go a long way toward encouraging both parents to share the rights, responsibilities, and frequently joyful and meaningful experiences of raising their children.

*In re Marriage of Weidner,* 338 N.W.2d 351, 359 (Iowa 1983).

 Evidence in this record supports the trial court's award of joint custody, with physical care dependent on when the children are in school. Of the benchmarks listed in Iowa Code section 598.41(3), only factor (h), "[t]he geographic proximity of the parents," gives us pause. We are mindful, however, that no one of those eight factors should be unduly emphasized. *In re Marriage of Ertmann,* 376 N.W.2d 918, 920 (Iowa Ct.App.1985). Flawed communication between the parents, a common problem in dissolution cases, does not in and of itself prevent a joint custody award. *See, e.g., id.* ("To be significant enough to justify a denial of joint custody, a lack of ability to communicate must be something more than the usual acrimony that accompanies a divorce."); *In re Marriage of Short,* 373 N.W.2d 158, 160 (Iowa Ct.App. 1985) (affirming joint custody award despite disagreements surrounding visitation and alleged inability to communicate). Neither does geographic separation prevent joint custody; it is just one of the factors which the trial court and we must weigh. In several recent cases we have kept joint custody arrangements in place even where considerable physical distance separated the parents. *See, e.g., In re Marriage of Frederici,* 338 N.W.2d 156, 159 (Iowa 1983) (joint custody retained despite move to Colorado of parent with physical custody; "geographical proximity is not an indispensable component of joint custody"); *In re Marriage of Bolin,* 336 N.W.2d 441, 446–47 (Iowa 1983) (move to California by parent with physical care not a sufficient reason for modifying decree providing for joint custody).

The trial court was impressed, as are we, with the fact-based recommendation of joint custody made in summation by the attorney who had been appointed to represent the three minor children. Immediately after hearing closing arguments, the trial court spoke directly to the parties and eloquently expressed its reasons for selecting this joint custody arrangement.

> I think [joint custody] will encourage these people, both of whom are intelligent and who should be able to act as adults, and both of whom love their children, to communicate with regard to the welfare of the children.
>
> If I give the custody to one parent and not to the other, that means that parent says, I'm totally responsible, I don't have to consult the other parent. And I think the best interests of the children lie in having both a mother and a father, even though the mother and the father can't get along very well together and have to be separated.
>
> I think that it's unfortunate that the children are living as far away from the father in Iowa as they are but that's the way it is and that's the situation we find ourselves in. The court can't change that. I can't tell either of these people where they are going to live or why. That's their own decision, again considering what they believe to be the best interests of the children.
>
> So I think that the best interests of the children lie in the fact that they be with their mother during the school year out in Washington and to be with their father in the summertime on the farm with the horses and the other animals and the friends that they have here and the relatives that they have here during the summer months when they aren't in school.

What we said in *In re Marriage of Callahan,* 214 N.W.2d 133, 136 (Iowa 1974), bears repeating:

In these dissolution cases, a court is greatly helped in making a wise decision about the parties by listening to them and watching them in person.

We cannot improve upon the trial court's reasoned and wise decision granting joint custody with alternating physical custody.

## II. *Economic Issues.*

Both parties challenge several of the economic provisions in the dissolution decree. Alvin contends he should not be required to pay child support during the summer months when the children are physically in his care, or the expense of transporting the children to and from Iowa. Barbara argues that she should receive more alimony than $50 each month for twenty-four months, a greater share of the marital assets, and payment of more of her attorney fees.

The economic aspects of a dissolution decree must be viewed as an integrated whole. *In re Marriage of McFarland,* 239 N.W.2d 175, 179 (Iowa 1976); *In re Marriage of Bornstein,* 359 N.W.2d at 503. The property division, child support, and alimony provisions of a dissolution decree must be equitable to both parties and provide for the best interest of the minor children. *In re Marriage of Callenius* 309 N.W.2d 510, 514 (Iowa 1981); Iowa Code § 598.21 (1985).

The only real dispute concerning the parties' needs and resources concerned the extent to which the parties had accumulated money in a savings account and whether one of the parties spent that money. The evidence in this record does not support Alvin's contention that Barbara received a substantial amount from a savings account. Neither does the record uphold Barbara's contention that Alvin's salary had enabled them to save considerably more than what Alvin had accumulated in a retirement fund at his place of employment.

In summary, the parties owned no real estate and had few assets or liabilities. The decree fairly divided their personal effects. At the time the dissolution decree was entered Alvin was well employed as a project engineer for a small manufacturing concern, annually earning approximately $31,000 in salary and a year-end bonus. Barbara was attending school and expected to be employed and self-supporting within two years. The trial court's decree required Alvin to pay $500 per month child support, $50 per month alimony for two years, and round-trip transportation for the children from Washington to Iowa each summer.

The criteria for granting child support set forth in Iowa Code section 598.21(4) (1985) are satisfied by this decree. The trial court was not required to suspend payment of child support during the summer months when the children would be in Iowa, since many of Barbara's expenses of maintaining a home for herself and her children would continue during the summer. The reduced cost of food and incidental expenses would not mandate interruption in support payments. *See In re Marriage of Fleener,* 247 N.W.2d 219, 221 (Iowa 1976); *In re Marriage of Glass,* 213 N.W.2d 668, 671 (Iowa 1973).

The provision for alimony in the decree satisfied the criteria in Iowa Code section 598.21(3)(e), (f) (1985). The rehabilitative alimony during a two year period when Barbara would be in school makes good sense, balancing Barbara's need with Alvin's ability to pay. *See In re Marriage of Hitchcock,* 309 N.W.2d 432, 437 (Iowa 1981); *In re Marriage of Estlund,* 344 N.W.2d 276, 281 (Iowa Ct.App.1983).

If one were to consider the division of marital assets without taking into account other economic provisions in the decree, it might appear that Alvin had received more than his share. Conversely, if one were to consider only the costs of transportation for visitation, child support and alimony which Alvin must pay, one might conclude that the decree unfairly favored Barbara. These various divisions of property and awards, however, "can neither be made nor evaluated in a vacuum." *In re Marriage of Campbell,* 204 N.W.2d 638, 639 (Iowa

1973); *see Schantz v. Schantz,* 163 N.W.2d 398, 405 (Iowa 1968).

With painstaking care the trial court measured the resources and needs of Alvin, Barbara, and their children, then tailored the economic provisions of the decree to fit their special circumstances. We subscribe to the trial court's division of property and determination of the amounts Alvin must pay for alimony, child support, and the annual cost of transportation necessary to carry out the sound joint custody arrangement.

Costs on appeal are taxed to Alvin, and he is directed to pay $900 toward Barbara's attorney fees and expenses incurred in this appeal.

AFFIRMED.