**In re the MARRIAGE OF Donald B. STICKLE and Janice D. Stickle.**

**Upon the Petition of Donald B. Stickle, Petitioner-Appellant,**

**And Concerning Janice D. Stickle, Respondent-Appellee.**

No. 86–879.

Court of Appeals of Iowa.

April 22, 1987.

Timothy S. White and Alfred E. Willett, Cedar Rapids, for petitioner-appellant.

Donna L. Paulsen of Lynch, Dallas, Smith & Harman, Cedar Rapids, for respondent-appellee.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

HAYDEN, Judge.

Petitioner husband, Donald B. Stickle, appeals from the trial court's decree of dissolution. Respondent wife, Janice D. Stickle, and petitioner were married on November 10, 1978, at Nashua, Iowa. As a result of this union one child, Jessica Anna-Marie, was born on August 8, 1984.

Respondent was raised and educated in Yardley, Pennsylvania. She came to Iowa in 1977 to attend Kirkwood Community College in Cedar Rapids. The parties met while she was enrolled at the college. Although respondent completed only two semesters of the college's horse husbandry program, she did receive a nurses' aid certificate from the college in 1985. After the parties were married respondent worked full time in Cedar Rapids, but quit because of the commuting distance and the work required at the Anamosa residence. During the marriage respondent worked as the homemaker for the parties. Along with these full time duties she also worked with petitioner for his family's enterprises and in their own horse and hog operation. She was twenty-seven at the time of trial.

Petitioner was born, raised, and educated in the Anamosa area. Following his graduation from high school he went to work full time for the family farm business located in north Linn County. The family businesses consist of farming operations, a bull rental service, and a salvage feed operation. The marital domicile throughout the relationship was a house owned by petitioner's family's corporation and occupied rent-free by the parties. Petitioner was also twenty-seven at the time of the trial.

On November 2, 1984, Donald filed his petition for dissolution of marriage in the district court of Linn County. The district court, on the same day, issued a temporary writ of injunction prohibiting respondent from removing Jessica from the State of Iowa while the proceedings were pending. Both parties conducted extensive discovery, which involved the production of documents, interrogatories, in-state and out-of-state depositions, and requests for protective orders. As a result of the amount of discovery, the necessary hearings and numerous continuances, this dissolution did not appear before the trial court until March 17, 1986. During the approximately sixteen and one-half month period from the filing of the petition until the first day of trial respondent and petitioner continued to reside in the house on his parent's farm. The trial lasted eleven days and concluded on March 31, 1986.

In its decree dated June 26, 1986, the court arranged for joint custody with respondent having physical care of Jessica. Petitioner was directed to pay $150 per week child support, $1 per week alimony, and $8,000 toward respondent's attorney fees. Petitioner was instructed to pay respondent a property settlement of $155,-000, payable in three installments. The court dissolved the temporary injunction requiring respondent and Jessica to remain in Iowa. Once the decree had been filed, respondent promptly moved to Pennsylvania.

Petitioner contends: (1) the trial court erred in awarding respondent physical care of the parties' child; (2) the trial court should not have permitted respondent to move to another state with the parties' child; and (3) the property division is inequitable. Respondent requests attorney fees on appeal.

Our standard of review is de novo. Iowa R.App.P. 4. We review the facts and the law and determine anew the rights of the parties based upon credible evidence where issues have been properly presented and preserved. *In re Marriage of Phipps*, 379 N.W.2d 26, 27 (Iowa App.1985). Although we give weight to the findings of the trial

court, especially concerning the credibility of the witnesses, we are not bound by them. *In re Marriage of Bornstein*, 359 N.W.2d 500, 502 (Iowa App.1984); Iowa R.App.P. 14(f)(17).

## I.

The critical issue on this appeal is whether the trial court erred in awarding physical care of Jessica to respondent in light of her desire to move out of this state. The injunction was imposed by petitioner's motion, immediately after the filing of his petition for dissolution of marriage. The removal of Jessica was facilitated by the trial court's elimination of the temporary injunction. Petitioner contends the following factors justified awarding him primary care of Jessica: respondent's reasons for removing the child; the distance and location of the child's new home; the comparative advantages and disadvantages of the child's new environment; the impact the removal would have on the child; and the access rights the petitioner would have if the removal was allowed.

The difference between joint custody and physical care is important on this appeal. Joint custody allows the parents equal rights and responsibilities toward the child. Iowa Code § 598.1(4) (1985). Physical care is the right and responsibility to maintain the principle home and provide for the routine care of the child. Iowa Code § 598.1(5) (1985). The court may award physical care to only one parent. An award of joint custody does not solve the problem of where the child will live. Neither party questions the propriety of the award of joint custody. An award of physical care is conditioned upon a finding by the trial court that such action would be in the child's best interest. Iowa Code § 598.-41(5) (1985).

Although the following excerpt from *In re Marriage of Frederici*, 338 N.W.2d 156, 159-60 (Iowa 1983), involves an attempted modification based upon the custodial parent's relocation out-of-state, we find the language persuasive:

Geographical proximity is a desirable feature of joint custody because it enhances the opportunity for access between the children and the parent who does not maintain their primary residence. Nevertheless, geographical proximity is not an indispensable component of joint custody, and, at least when the decree is silent on the issue, the parent having physical care of the children must, as between the parties, have the final say concerning where their home will be. This authority is implicit in the right and responsibility to provide the principal home for the children. The right would mean little if the other custodian could veto its exercise.

In determining joint custody one of the factors listed in section 598.41(3) is "the geographic proximity of the parents," (factor g). Several recent cases have kept joint custody even where considerable geographic distance separated the parents. *See, e.g., In re Marriage of Behn*, 385 N.W.2d 540, 542 (Iowa 1986) (physical care retained with mother during school year despite her move to Washington, affirming trial court decree); *In re Marriage of Frederici*, 338 N.W.2d 156, 159 (Iowa 1983) (joint custody retained despite move to Colorado of parent with physical custody; "geographical proximity is not an indispensable component of joint custody"); *In re Marriage of Bolin*, 336 N.W.2d 441, 446–47 (Iowa 1983) (move to California by parent with physical care not a sufficient reason for modifying decree providing for joint custody).

When considering whether removal should be prevented, the trial court must consider all of the surrounding circumstances. *Frederici*, 338 N.W.2d at 160. Specific factors are, "the reason for removal, location, distance, comparative advantages and disadvantages of the new environment, impact on the children, and impact on the joint custodial and access rights of the other parent." *Id.*

It is clear from the record that respondent provided the day to day care for Jessica. We also find that respondent can minister most effectively to the routine daily needs of the child, therefore making the trial court's award of physical care to

respondent more than reasonable. The parent who is awarded physical care has the right to determine where the home will be; this authority is implicit in the right and responsibility to provide the principle home for the child. After considering the appropriate standards from *Frederici*, we make the following findings. Respondent's desire to remove Jessica from Iowa is a rational choice. She knows few people in Iowa, her sole contact here has been petitioner and his family, and her family still resides in Yardley, Pennsylvania. Her reason for removal is to escape the oppressive and foreign surroundings in which she has literally been trapped since the filing of the petition, and return to her home state. She is to reside on her father's farm, surrounded by her relatives. Although it is not apparent whether respondent has found employment, we find that her economic stability and the possibility of future employment are greater in the Yardley, Pennsylvania, area. We recognize petitioner's right to maintain maximum physical and emotional contact with the child, but this must be considered with other factors to determine Jessica's best interest. We agree with the trial court that Jessica's best interest will be served through physical care in respondent and removal to Pennsylvania. Finally, in support of our decision, we cite the following from *Cooper v. Cooper*, 99 N.J. 42, 53, 491 A.2d 606, 612 (1984):

> [A]fter a divorce a child's subsequent relationship with both parents can never be the same as before the divorce when the family lived together. As stated [by the New Jersey Supreme Court], "[t]he family unity which is lost as a consequence of the divorce is lost irrevocably, and there is no point in judicial insistence on maintaining a wholly unrealistic simulation of unity." The realities of the situation after divorce compel the realization that the child's quality of life and style of life are provided by the custodial parent. (Citation omitted.)

## II.

Petitioner next contends that the trial court erred in awarding primary care of Jessica to respondent in light of what is in the best interest of Jessica. In deciding upon physical custody this court reviews the factors set forth in *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). We agree with the trial court that the long-range interest of Jessica will be best served through physical care vested in respondent. Petitioner, in his brief, attempts to lead us on a detailed criticism of respondent and her ability as a parent. Although we recognize these arguments and consider them in making our ultimate decision, we do not feel they warrant detailed discussion on appeal.

Regarding respondent's removal of the child and how it relates to physical care, we find the following informative. We note that emotional trauma can be expected whenever children are removed from familiar surroundings, but it is not alone sufficient to justify shifting physical care to the nonmoving joint custodian. *Frederici*, 338 N.W.2d at 160. As pointed out earlier, respondent can minister more efficiently to Jessica's routine needs. Although respondent is a shy, quiet, and possibly "anti-social" person, we find she is also a loving and caring mother. In the final analysis we find her to be the proper custodian for Jessica.

## III.

Petitioner next contends the trial court erred in its distribution of the assets and debts. We disagree.

Pursuant to Iowa Code section 598.-21(1) (1985), the trial court shall divide the property of the parties "except inherited property or gifts received by one party, equitably between the parties." A justified property division is one that is equitable under the circumstances. *Locke v. Locke*, 246 N.W.2d 246, 251 (Iowa 1976); *In re Marriage of Stewart*, 356 N.W.2d 611, 612 (Iowa App.1984). We reject any rule based on a specific percentage division of the assets, and recognize that we must determine what is equitable under the facts of each case. *In re Marriage of Callenius*, 309 N.W.2d 510, 514 (Iowa 1981).

■ In determining the marital assets, the trial court considered: the length of the marriage, the gifts and inheritances received by both parties during the marriage, the contributions by both parties, the court valuated the assets of petitioner's family's corporations, and found total marital assets of $388,000. We note that when a trial court's method of valuation is well within a permissible range of evidence, we generally are not inclined to disturb it. *In re Marriage of Bare*, 203 N.W.2d 551, 554 (Iowa 1973). Once the court determined the total assets, it divided the property 60% to petitioner and 40% to respondent. Therein granting respondent $155,000 in property division. We find this distribution by the trial court to be reasonable.

■ In his initial brief, petitioner attempts to raise the issues that the trial court erred in the child support, alimony, and attorney fee provisions. In the initial brief these issues are only raised in the conclusion, no statement of issues was made. Although petitioner does make a statement of issue regarding these issues in his reply brief, he fails to cite any authority to support his position. "Failure in the brief to state, to argue or to cite au-thority in support of an issue may be deemed a waiver of that issue." Iowa R.App.P. 14(a)(3). We determine petitioner has waived these issues. Moreover, if we addressed these issues, we would affirm the trial court's award of child support, alimony, and attorney fees.

Finally, on appeal, respondent requests attorney fees. The allowance of attorney's fees incurred on appeal is generally based upon the parties' respective financial resources. *In re Marriage of Pittman*, 346 N.W.2d 33, 37 (Iowa 1984). We also consider whether the party making the request for fees was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle*, 312 N.W.2d 147, 150 (Iowa App. 1981). After reviewing respondent's affidavits for attorney fees on appeal, we determine petitioner shall pay $3,725 to respondent to apply upon her attorney fees.

AFFIRMED.