Upon the Petition of D. Carl STURTZ, Petitioner–Appellee, And Concerning Sue Carol Sturtz, Respondent–Appellant.

No. 86–786.

Court of Appeals of Iowa.
Considered en banc.

Aug. 26, 1987.

Donald G. Juhl, Nevada, for respondent-appellant.

Gene L. Beach, Marshalltown, for petitioner-appellee.

OXBERGER, Chief Judge.

In this appeal, respondent Sue Sturtz challenges the economic provisions of the decree dissolving her twenty-nine year marriage to petitioner Carl Sturtz. Sue has raised two issues for appellate consideration: (1) that the trial court erred in refusing to consider Carl's pension and retirement benefits as part of the marital estate and in including Sue's inheritance in the estate; and (2) that the trial court erred in limiting Sue's alimony award to a period of five years. We affirm as modified.

The principles governing our review in proceedings of this nature are familiar and well established. Our standard of review is de novo. Iowa R.App.P. 4. Accordingly, we review the facts and the law and determine the parties' rights anew where issues have properly been presented and preserved. *In re Marriage of Phipps*, 379 N.W.2d 26, 27 (Iowa App.1985). Although we are not bound by the trial court's findings of fact, we give them weight, particularly where the credibility of witnesses is implicated. *In re Marriage of Bornstein*, 359 N.W.2d 500, 502 (Iowa App.1984).

Initially, we note our concurrence with Sue's assertion that the trial court erred in refusing to allow her to share to some extent in Carl's pension and retirement benefits. *See In re Marriage of Bevers*, 326 N.W.2d 896, 900 (Iowa 1982) (pension benefits are properly considered in formulating the economic portions of a dissolution decree). It remains for us, however, to determine how these benefits should be

apportioned among the parties. In this respect, we find guidance in the supreme court's decision in *In re Marriage of Jones*, 309 N.W.2d 457 (Iowa 1981). There, the court awarded the pensioner's wife thirty-seven percent of benefits in the form of periodic alimony. *Id.* at 461. In arriving at this figure, the court applied the general principles governing an alimony award. For example, the court stated that:

> The alimony issue involves the wife's need by way of support and the husband's ability to pay toward that support. Geraldine's need is evident. Charles' ability to pay is also evident; *factually* his income from retired pay cannot be realistically ignored, and it is subject to levy for support.

*Id.* (Emphasis in original.)

Similarly here, we think that Carl's pension and retirement benefits should be apportioned in the form of periodic alimony. The record discloses that Carl's vested pension rights at the time of trial totaled $448 per month. If Carl is to continue in his employment until 1992, his pension benefits will increase to approximately $1,000 per month. We have applied the general criteria governing the proper amount of alimony to be awarded in a particular case, *see* Iowa Code § 598.21(3)(1985), to these figures, and conclude that Sue should be entitled to receive, as her portion of these benefits, $250 per month in the form of periodic alimony. *See In re Marriage of Williams*, 199 N.W.2d 339, 345 (Iowa 1972) (two considerations given substantial weight in the determination of alimony are the duration of the marriage and the ability of the spouse seeking support to engage in gainful employment); *In re Marriage of Eastlund*, 344 N.W.2d 276, 281 (Iowa App. 1983) (in ascertaining amount of alimony, court must consider earning capacities of each party, standard of living enjoyed, and ability to pay balanced against relative need.) These payments are in addition to Sue's general alimony award pursuant to the dissolution decree, and should commence when Carl begins receiving the benefits. In addition, we order that these payments should continue as long as Sue and Carl survive or until Sue remarries.

We next address Sue's contention that the trial court erred in considering the value of her inherited property when it determined her alimony award. After reviewing the record, we are persuaded that the court committed no error. The record reflects that the court set aside to Sue her inherited property but considered its value and the income Sue was likely to derive therefrom in determining the amount of her alimony award. This fully accords with the applicable case law. *See In re Marriage of Stewart*, 356 N.W.2d 611, 613 (Iowa App.1984) (gifted or inherited property may be considered in determining an award of alimony).

Finally, we find no error in the general alimony award fashioned by the trial court. We think that this award appropriately balances Sue's needs against Carl's financial ability. *See In re Marriage of Eastlund*, 344 N.W.2d at 281. Moreover, given the division of assets formulated by the court and Sue's earning capacity, we cannot say that the court erred in limiting the duration of the alimony in this case. *See In re Marriage of Griffin*, 356 N.W.2d 606, 608–09 (Iowa App.1984).

In summary, we modify the trial court's decree only with respect to the treatment of Carl's pension, any other aspects of the decree are affirmed. We order each party to pay his or her individual attorney's fees and split equally the costs incurred in connection with this appeal.

AFFIRMED AS MODIFIED.

All judges concur except SACKETT and SCHLEGEL, JJ., who concur in part and dissent in part.

SACKETT, Judge (concurring in part and dissenting in part).

## I.

I concur with the majority's decision to modify the decree to award Sue more money to compensate her for the inequity caused by the trial court's decision to ignore Carl's pension because it was contingent on Carl's survival. I agree with their

determination she was equitably treated on the issue of inherited property and the trial court was correct in considering inherited property in assessing Sue's need for alimony. *In re Marriage of Stewart*, 356 N.W. 2d 611, 613 (Iowa App.1984).

The majority is in error in considering the pension *only* as it applies to alimony. To reach this decision the majority has interpreted *In re Marriage of Jones*, 309 N.W.2d 457 (Iowa 1981), as holding that pension funds could *not* be divided as property but should only be used to determine alimony. Their reliance on *Jones* is misplaced. *Jones* involved military retirement. *Jones*, 309 N.W.2d at 459. *Jones* was decided in 1981 after the Supreme Court determined in *McCarty v. McCarty*, 453 U.S. 210, 101 St.Ct. 2728, 69 L.Ed.2d 589 (1981), there was a conflict between the community property law of the State of California and the federal military retirement statutes and that military pay continues to be the personal entitlement of the retiree. *Id.* Consequently federal law preempted and military pay could not be considered marital property. In 1983, after *Jones*, Congress enacted the Uniformed Services Former Spouses' Protection Act Pub.L. No. 97–252, 96 Stat. 718, 730–738 (1983). The act removed the federal preemption of state laws and allows division of military pensions in dissolution proceedings. *See In re Marriage of Yates*, 365 N.W.2d 49, 50–51 (Iowa App.1985). Because federal law precluded military pensions from division in 1983 alimony basically the court had no choice but to award alimony and could not divide it as property. *Jones* does not establish a precedent for non-military pensions such as we are dealing with in this marriage.

In this case I would find it unnecessary to arrive at a current worth or present value of the pension benefits. I would determine a portion of the pension benefits should be awarded to Sue if and when they accrue. The determination of a fixed percentage for Sue of any future payments Carl receives under the plan, payable when paid to Carl, makes it unnecessary to determine the present value of the pension fund. *See Taylor v. Taylor*, 329 N.W.2d 795, 799

(Minn.1983). The advantage of effecting a division of the actual monetary benefits if and when they accrue is that this approach allocates equally between Carl and Sue the risk the pension benefits may never be paid. *See DuBois v. DuBois*, 335 N.W.2d 503, 505 (Minn.1983). Apportioning the future benefits only if and when they are paid is an approach suggested in leading cases from other states. *See Janssen v. Janssen*, 331 N.W.2d 752, 756 (Minn.1983); *In re Marriage of Brown*, 15 Cal.3d 838, 845, 126 Cal.Rptr. 633, 637, 544 P.2d 561, 565 (1976). In instances where it is difficult to place a present value on the pension or profit sharing interest due to uncertainties regarding vesting or maturation, each spouse may be awarded an appropriate percentage of the pension to be paid "if, as an when" the pension becomes payable. Furthermore, if an immediate award is made to Sue in exchange for Carl's contingent right to receive pension benefits, there is a question whether the equalization can be made from existing assets. If it were made it would leave Carl with few assets other than the pension rights. *In re Marriage of Hunt*, 78 Ill.App.3d 653, 663, 34 Ill.Dec. 55, 63, 397 N.E.2d 511, 519 (Ill.App.1979). The nonpension spouse's interest in each payment will be a fraction of that payment; the numerator of the fraction being the number of years of marriage during which benefits were being accumulated, the denominator being the total number of years during which benefits were accumulated prior to when paid. *Id.*

Before determining the amount of Carl's pension to be allocated to Sue, I find it necessary to address the fact that the entire pension will be subject to federal and state income taxes. We are required to consider tax consequences to the parties in a dissolution. Iowa Code § 598.21(3)(g) (1987). We must also consider the tax consequences to Carl in allocating the pension. The actual tax Carl will owe on pension payments cannot be determined with certainty at this time. It will depend on current federal income tax rates and the income tax rates of the state of his retirement residence. It will also be affected by

his other taxable income. I therefore look at current rates in assessing tax consequences. Under 1986 tax rates, a single Iowa resident with no additional dependents and no other taxable income would owe approximately $1,600 in federal and state tax on a $12,000 income.[1]

I also consider the social security benefits accrued during marriage by each party in allocating the pension benefits. Sue points out that because Carl was employed outside the home during the entire marriage and has earnings of approximately three times those of Sue's, he has built up F.I.C.A. coverage in excess of Sue's and he will have larger social security benefits on retirement than Sue. Sue will be able to draw either on her own account or Carl's, but not both. If she draws on Carl's account, Sue's benefits will be one-half the amount he draws. Sue's benefits on her own account will be substantially less than Carl's because of her lower earnings.[2] *See* Missal, Social Security benefits and the divorced spouse, 91 Case & Com. 24(4) (1986) (Also published in Family Law Review).

I consider the property division and alimony award together in allocating the pension. *See In re Marriage of Bevers*, 326 N.W.2d 896, 900 (Iowa 1982). As such, I determine the following to be an equitable allocation of the pension in this case. The amount of each pension payment received by Carl that shall be payable to Sue is one-half of a fraction of the total payment. The numerator of the fraction shall be 23 (representing the number of years of the marriage) and the denominator shall be the total number of years during which the benefits accumulated prior to payment. When Carl commences drawing his pension he shall file with the Clerk of Court of Tama County a statement from the Teamsters union showing the number of years during which benefits accumulated and the amount of monthly benefits he will receive. On or before the last day of each month in which he draws benefits he shall pay to Sue through the Clerk of the Court of

Tama County that portion of the pension payment which has been allocated to her. Judgment shall be rendered against Carl for any amounts not paid. These payments are considered part of the property award made to Sue. The decree is modified to so provide.

Finally, I commend the attorneys for the parties for filing excellent briefs which clearly set out the property division made by the trial court and focused on the limited areas of disagreement.

## II.

The decision to allocate pension funds to Sue only through alimony is grossly unfair and shows a total insensitivity by this court to the worth of a spouse who through the agreement of the marriage partners has assumed the role of homemaker. By assuming the role of homemaker Sue entered a job market where there were no provisions for her to accrue retirement and disability benefits by way of FICA and pension funds in her own right.

While I recognize the Iowa courts are not bound to divide assets acquired during the marriage by any fixed percentage, the reality is decisions dictated in most cases a nearly equal division of assets acquired during marriage. However, this court refuses to divide these pension benefits as property and give her one-half of these benefits outright. Even with one-half of the pension benefits, she will probably not receive retirement benefits accrued during the marital years equal to those of her husband because the homemaker spouse in most cases will receive only one-half the social security benefits of the spouse employed outside the home.

Additionally, by awarding a portion of the pension through alimony, should Sue remarry, barring extraordinary circumstances, she will lose this alimony. *See In re Marriage of Shima*, 360 N.W.2d 827, 828 (Iowa 1985). If she remarries she

---

1. A single person with $12,000 income claiming one dependent and a standard deduction would have federal tax of $1,182 in 1986. *See* 1986 Federal Tax Table, and Iowa tax of $437. *See* Short Form Individual Income Tax Booklet IA 1040A for 1986.

2. Sue must elect between the two.

must rebut a presumption her alimony will terminate. *Shima,* 360 N.W.2d at 828. She cannot use the fact she spent time as a homemaker to rebut this presumption. *Shima,* 360 N.W.2d at 829.

I feel each spouse should have a right to an equitable portion of the assets of the marriage. They each should have the same economic security whether they marry again or not. I find no justification for the position this court has adopted that in essence says the homemaker spouse can share in property accrued in pension benefits during the marriage if she remains single but lose her rights if she does not. Such a position is based on an outdated social stereotype that women have no need for economic security after another husband comes along.

SCHLEGEL, J., concurs in division I only.