**In re MARRIAGE OF Roger E. MOTT and Jennifer J. Mott.**

**Upon the Petition of Roger E. Mott, Petitioner–Appellee/Cross–Appellant,**

**And Concerning Jennifer J. Mott, Respondent–Appellant/Cross–Appellee.**

No. 88–358.

Court of Appeals of Iowa.

May 23, 1989.

**508**

Arthur L. Buzzell, Davenport, for respondent-appellant/cross-appellee.

Jack Dusthimer of Carlin, Hellstrom & Bittner, Davenport, for petitioner-appellee/cross-appellant.

Considered by OXBERGER, C.J., and DONIELSON and HABHAB, JJ.

DONIELSON, Judge.

Jennifer Mott appeals various economic provisions of the dissolution decree. She claims the trial court abused its discretion in (1) ordering Roger to pay only $500 per month in child support; (2) failing to require Roger to pay college expenses for the minor child; (3) its alimony award; and (4) in awarding her only 22–25% of Roger's pension benefits. Roger cross-appeals claiming (1) the trial court's division of his pension benefits inequitably allows Jennifer to benefit from the accumulation of pension benefits after the dissolution; and (2) both the child and spousal support payments awarded Jennifer are economically inequitable.

Roger and Jennifer Mott were married December 26, 1965. The decree dissolving their marriage was filed October 21, 1987. At the time of the entry of the decree, Roger was forty-five, and Jennifer was thirty-eight. They had two children, Princess Paige Mott, born April 26, 1966, and Whitney P. Mott, born July 14, 1972.

Whitney has a chronic arthritic condition that requires ongoing medical expenses.

Jennifer married while still in high school and completed high school after marriage. During the marriage, she obtained a junior college education, but no degree, and obtained a real estate license. She has held various jobs during the marriage, mostly in retail sales. In the years prior to the divorce she had been active in real estate sales. She expected to earn $12,500 in 1987.

Roger has a BA in Engineering, obtained before the marriage, and an MA in Engineering, obtained during the marriage. He has been employed as a mechanical engineer for Deere & Co. for over twenty-six years. In 1987 his salary was over $65,000, and he had additional job benefits of a pension, health and life insurance, and a stock plan.

*Scope of Review.* Our review of this matter is de novo. Iowa R.App.P. 4. This court gives weight to the trial court's findings of facts, but is not bound by them. Iowa R.App.P. 14(f)(7).

Roger claims Jennifer raised herself to a higher standard of review because in her brief she alleges the trial court abused its discretion in making an inequitable property and support award. He asserts that she should be required to show on appeal the trial court abused its discretion, rather than merely showing the trial court's findings were inequitable. Roger, in his brief, cites the following cases for this proposition: *Linge v. Ralston Purina Co.*, 293 N.W.2d 191 (Iowa 1980) and *First Northwestern National Bank v. Crouch*, 287 N.W.2d 151 (Iowa 1980). *Linge* involves minority shareholders' action for wrongs done them in association with a tender offer and short-form merger. *Crouch* involved a transaction subject to the Iowa Consumer Credit Code. Neither of these cases were in equity. Further, neither of these opinions made any mention of the legal proposition for which they were cited. Consequently, we find no merit in Roger's contention.

## I. Child Support

The trial court ordered Roger to pay Jennifer $500 a month in child support. Jennifer asserts the child support award is inadequate considering the needs of the child and Roger's income. Roger complains the award is too high.

In evaluating a child support award, we consider the factors set out in Iowa Code section 598.21(4). The amount awarded is for the reasonable and necessary support of the child. Iowa Code § 598.21(4) (1989). Both parties have an obligation to support their minor children. *In re Marriage of Fleener*, 247 N.W.2d 219, 221 (Iowa 1976). The obligation to support should be apportioned according to the ability of each parent to contribute. *In re Marriage of Bornstein*, 359 N.W.2d 500, 504 (Iowa App. 1984).

Roger's net income, before voluntary deductions, was $3,721 per month in September 1987. His monthly expenses were $2,707. Jennifer estimated her monthly gross income was $1,035. Her monthly expenses, including taxes, were $3,437. Jennifer's expenses are high due to her payments on two mortgages and the expenses associated with maintaining the marital home and supporting the minor child living with her. Both parties have substantial liabilities upon which they make monthly payments.

Based on the financial resources of the parents, Roger is able to contribute more toward the support of Whitney than Jennifer is. It should be noted that only $51 of Roger's listed monthly expenses is for the support of Whitney, that being insurance. Jennifer's expenses, on the other hand, include substantial sums for the support of Whitney. These include mortgage payments, taxes, utilities and upkeep of the home, speech therapy, dance lessons, school activities, and lunches. Jennifer clearly is expending her entire income for the support of Whitney. Roger, on the other hand, spends a substantial portion of his income on himself.

We find, based on Whitney's needs, the financial resources of the parties and the standard of living Whitney enjoyed while living in the marital residence prior to dissolution, that $500 per month is reasonable and necessary for the support of Whitney. Jennifer asserts the award is inadequate because it amounts to less than ten percent of Roger's gross income. The law clearly holds support should not be fixed at any set percentage of income but should be assessed in accordance with the factors set out in section 598.21(4). *In re Marriage of Anderson*, 400 N.W.2d 84, 85 (Iowa App. 1986). We consider the economic provisions of the dissolution decree as a whole. *In re Marriage of Griffin*, 356 N.W.2d 606, 608 (Iowa App.1984). Considering the property award and spousal support, we find $500 per month child support to be equitable.

## II. Child Support Beyond High School

Jennifer complains the trial court did not make any provision for the post high school education of Whitney except to incorporate the provisions of section 598.-1(2) into the decree. Ordinarily, the support obligation ceases when the child reaches age eighteen unless the evidence establishes a statutory provision, such as 598.-1(2), applies. *In re Marriage of Rohlfsen*, 398 N.W.2d 197, 199 (Iowa App.1986). Section 598.1(2) does not require such support in all cases but allows the trial court, in its discretion, to award support of the children through college under the proper circumstances. *In re Marriage of Vrban*, 293 N.W.2d 198, 202 (Iowa 1980). The trial court has continuing authority to modify the child support order. *Rohlfsen*, 398 N.W.2d at 199. Either party may petition the court for modification in the event Whitney desires to attend college. *Rohlfsen*, 398 N.W.2d at 200; Iowa Code § 598.21(8) (1989). We find nothing inequitable in the trial court's deferment of this matter.

## III. Spousal Support

The trial court awarded Jennifer spousal support in the amount of $750 per month for twelve months (commencing October 21, 1987), then $650 per month for twelve months, then $600 per month for twelve months, then $500 per month for

twelve months, and then $400 per month for twelve months, at which time the spousal support will terminate. This amounts to nearly $35,000 over five years. Jennifer asserts the trial court's award is inadequate because it fails to provide her with funds to maintain her predissolution standard of living.

The factors relevant in this case in determining spousal support are the length of the marriage, the age and health of the parties, Jennifer's earning capacity, the feasibility of Jennifer becoming self-supporting at her predissolution standard of living, and the tax consequences. Iowa Code § 598.21(3) (1989). Ideally, spousal support is awarded in an amount sufficient to maintain the standard of living comparable to that enjoyed during the marriage. However, this is not possible when the parties have limited income.

Roger's income was over $65,000 per year in 1987. Jennifer testified during the marriage she was able to spend money without being concerned about the parties' finances. They enjoyed yearly vacations. They owned a house. The parties mutually agreed Jennifer would own the house. To that extent, her standard of living has not changed. However, she has responsibility for the mortgages and maintenance expenses.

Jennifer has substantial liabilities upon which she has monthly payment obligations. Her monthly debt reduction payments, including house payments, total at least $1,000. She obviously has difficulty maintaining her standard of living on her monthly income of $1,035. However, Roger too has substantial liabilities. His monthly debt obligations amount to $1,389. Add to that amount his house payment (rent and dues) $479, and his obligations comparable to Jennifer's total $1,868. Roger listed his total expenses, including debt obligations, at $2,707 per month. His net income per month before voluntary deductions in September 1987 was $3,721, leaving him a little more than $1,000 in disposable income. The trial court ordered he pay Jennifer $1,150 in support payments the first year and $1,050 the next year.

Based on both parties' financial situation, it is apparent they cannot maintain their standard of living at the level enjoyed during the marriage.

The trial court awarded support to the extent Roger could pay. The trial court also determined, and we agree, that Jennifer's employment situation was stable and her net income was expected to improve. Jennifer has her real estate license and is employed in that field. Additionally, she has experience in retail sales and earned nearly $25,000 in 1986 working three part-time jobs. Based on the parties' resources, debts, and Jennifer's earning capacity, we find the spousal support award adequate. However, we modify the award to continue until Jennifer's death, remarriage or cohabitation with a member of the opposite sex or until Roger's death or for five years as ordered in the decree, whichever occurs first.

### IV. Pension Benefits

■ The trial court awarded Jennifer twenty-five percent of the amount of pension benefits Roger receives if he retires before age sixty, and twenty-two percent of the amount he receives if he retires after age sixty. Jennifer asserts the award is inequitably low. Roger asserts the award is inequitable because it allows Jennifer to benefit from the accumulation of pension benefits after the marriage terminated.

Pension benefits are treated as marital property in Iowa and are properly subject to equitable distribution. *In re Marriage of Howell,* 434 N.W.2d 629, 632 (Iowa 1989). Roger's pension should be distributed according to its present worth. *See In re Marriage of Bevers,* 326 N.W.2d 896, 900 (Iowa 1982); *In re Marriage of Wheeler,* 418 N.W.2d 362, 363 (Iowa App.1987). Any other valuation would allow Jennifer to share in the amount of funds Roger accumulated after the marriage.

The appellate courts of this state have devised several schemes for the distribution of pension benefits in a dissolution. The first scheme is to award a percentage of the benefits already being received. *See Howell,* 434 N.W.2d at 633. This system is

inapplicable here because Roger has not retired and is not receiving benefits.

The second scheme available is to award a lump sum percentage based on the present value of the pension. *See Wheeler*, 418 N.W.2d at 363. Valuation of a pension is complicated and requires the services of an actuary. *In re Marriage of Woodward*, 426 N.W.2d 668, 670 (Iowa App.1988). A CPA and tax partner testified at trial the present value of Roger's pension benefits, assuming he retires at age sixty-five, is $51,764. We find, based on Roger's present financial status, it would be inequitable to award Jennifer a lump sum percentage of $51,764. This obligation would be outside Roger's present economic ability to pay.

The third scheme available is to award Jennifer a percentage of the pension, as it becomes payable, in the form of periodic alimony. *See Petition of Sturtz*, 415 N.W.2d 173, 174 (Iowa App.1987). The trial court awarded Jennifer spousal support for only five years based on her earning capacity. Under this scheme, Jennifer would not be entitled to any percentage of the pension benefits because her support award would cease prior to Roger ever receiving his pension.

The fourth scheme for dividing pension benefits is to award Jennifer a portion of the pension benefits if and when they accrue. *Sturtz*, 415 N.W.2d at 175 (Sackett, J., concurring in part and dissenting in part); *Woodward*, 426 N.W.2d at 671. Although Roger's pension is 100% vested, there is a risk the pension may not be paid because it is contingent on survival. This system properly allocates the risk between the parties.

The fourth system differs from periodic alimony in that it awards a portion of the pension benefits in the property division. The trial court used the fourth scheme in awarding Jennifer a percentage of the benefits as they are paid. We find this scheme proper in this case.

The trial court awarded Jennifer a percentage of the benefits as of the date they are paid. The pension should be distributed according to its present worth. *Bevers*,

326 N.W.2d at 900. Roger's accrued benefit under the plan as of September 1986 was $1,790 per month. Jennifer should receive a percentage of the accrued benefits based on the years of the marriage. The appropriate portion of the pension accumulated during the marriage is 22/26. Twenty-two represents the duration of the marriage. Twenty-six represents the total number of years Roger worked and accumulated pension benefits. *See Howell*, 434 N.W.2d at 633. The total benefits which are marital property amount to $1,515 per month.

■ We distribute the pension pursuant to the factors in Iowa Code section 598.-21(1). Jennifer devoted all her time to the marriage for the first six years. The record is unclear to what extent she worked the remaining years, although she did earn $25,000 in 1986. Jennifer's social security and employment benefits have not accrued in any comparison to Roger's benefits. Consequently, her retirement is not well financed. However, she was only thirty-eight at the time of trial and has several years in the work force to accrue benefits. We find it equitable to award Jennifer thirty-five percent of the marital pension. We modify the trial court's decree to provide that Jennifer shall receive $530.25 from the pension monthly as benefits are paid to Roger.

AFFIRMED AS MODIFIED.