**In re the MARRIAGE OF Debra ERTMANN and John R. Ertmann.**

**Upon the Petition of Debra Ertmann, Petitioner-Appellee,**

**And Concerning John R. Ertmann, Respondent-Appellant.**

**No. 84–1982.**

Court of Appeals of Iowa.

Sept. 24, 1985.

Don E. Gottschalk of Gottschalk, Shinkle & Long, Cedar Falls, for respondent-appellant.

Leslie Knock of Mershon, Snow, Knock & Moothart, Cedar Falls, for petitioner-appellee.

Considered by OXBERGER, C.J., and SNELL and SACKETT, JJ.

PER CURIAM.

Petitioner Debra Ertmann and respondent John Ertmann were married on May 23, 1981. John attends Hawkeye Technical School and is studying Marketing Management. He attends classes in the morning and is employed in a work-study program for fifteen hours a week. Debra works 17 to 25 hours a week in a restaurant for $3.35 an hour. She works Monday, Wednesday, Saturday and Sunday nights.

Their one child, Nicole, was born on January 22, 1982, and was two and a half years old at the time of trial. Nicole is a very intelligent, active, emotionally and physically healthy child. It is not disputed that Debra was primarily in charge of Nicole's care and supervision during the marriage. Debra's placement in the child-rearing role was due to several factors. Nicole suffered a difficult birth and almost died. At first, Debra would not allow John to take care of Nicole and was over-protective. Furthermore, John grew up with the understanding that the mother takes care of children. This resulted in Nicole favoring her mother as a baby. However, when Nicole became a toddler, she showed more interest in her father and John began incurring more responsibility for the child. Since the parties' separation, John has demonstrated that he is capable of caring for Nicole and he involves Nicole in stimulating educational and social activities during visitation.

A temporary visitation order allowed John to have Nicole on Wednesday evenings and every weekend from 5:00 p.m. Friday until noon on Sunday. John exercised all of his visitation opportunities. The trial court awarded sole custody to Debra. It found that the couple could not communicate to the degree necessary to make a joint custody arrangement workable. The court noted that "the parties can-

not communicate personally without the communication degenerating into an argument or more serious controversy. The only 'communication' since the separation which has yielded any results has been through counsel." The court found that such a lack of communication between the parents makes joint legal custody impossible. The decree awarded John visitation on alternating weekends and holidays. The court limited John's visitation to prevent confusing Nicole by the "yo-yo" effect of constant physical transfer and to afford her a single stable home.

On appeal, John challenges the sole custody award. He contends that the trial court erred by not providing for joint custody of Nicole. He also requests that visitation be expanded to provide Nicole with maximum contact with both parents. Debra requests attorney fees on appeal.

■ Our review is de novo. Iowa R.App.P. 4. We are not bound by the trial court's findings of fact, but we give them weight. Iowa R.App.P. 14(f)(7).

**Joint Custody.** The statutory criteria to be considered in awarding custody are found in Iowa Code section 598.41(3) (1983). No one factor on the statutory list of those to be considered is to be unduly emphasized. *In re Marriage of Weidner*, 338 N.W.2d 351 at 358 (Iowa 1983).

John contends that the trial court relied solely on the inability of John and Debra to communicate as the ground to justify denial of joint custody. John argues that the court ignored the other factors in section 598.41(3) and, therefore, did not sufficiently show that joint custody was not in Nicole's best interests.

■ Whether the parents can communicate with each other regarding the child's needs is one factor to be considered by the court in determining if joint custody is in the child's best interest. Iowa Code § 598.-41(3)(c) (1983). It cannot be questioned that cooperation and communication between the parents is essential in joint custodial arrangements. However, our legislature was aware that in a divorce the parties are generally not getting along well and a custody contest magnifies the adversarial nature of the dissolution proceeding. To be significant enough to justify a denial of joint custody, a lack of ability to communicate must be something more than the usual acrimony that accompanies a divorce. "Tension between the parents is not alone sufficient to demonstrate [joint custody] will not work." *In re Marriage of Bolin*, 336 N.W.2d 441, 446 (Iowa 1983). The Iowa Supreme Court in *Bolin* described the key to successful communication in a joint custodial arrangement:

> Even though the parents are not required to be friends, they owe it to the child to maintain an attitude of civility, act decently toward one another, and communicate openly with each other. One might well question the suitability as custodian of any parent unable to meet these minimum requirements. Problems are likely to develop under any custodial arrangement. The adults must have the maturity to put their personal antagonisms aside and attempt to resolve the problems.

*Id.* at 447.

■ We believe that the communication difficulties John and Debra suffered did not warrant denial of a joint custodial arrangement. Both parties expressed a willingness to communicate for Nicole's sake. Even though Debra vehemently opposed joint custody on the ground of lack of communication between the parties, she testified during trial as follows:

Q. Do you think that that sort of discussion [regarding visitation changes] can be worked out when holidays come along or when there is something that would require a change in the normal visitation?

A. If there is specific visitation rights or visitations for him, yes; and if extended, yes, we could talk about it.

\*　\*　\*　\*　\*　\*

Q. You think this [communication] is something that will improve as the time goes along? You see any reason why it wouldn't improve?

A. It has to for Nicole's sake.

Q. You are willing to make an effort to see that that occurs?

A. Right.

Both are supportive of the other's relationship with Nicole. Despite the fact that their attorneys had to arrange the temporary visitation, the record demonstrates that no arguments arose between John and Debra during the temporary visitation period once a set schedule was established. Both parents give priority to Nicole's welfare and will be able to communicate adequately regarding Nicole's needs.

■ Contrary to John's contention that the parties' lack of communication was the sole ground for the trial court's denial of joint custody, the court also highlighted another factor to justify its decision. The findings of fact emphasize that Debra was the primary caretaker of Nicole during the marriage. The record supports this finding and indicates that John did not assume active care for Nicole until after the parties' separation. However, we have recognized that the focus of custody determinations should be on the long range best interests of the child and not solely on past parenting behavior. *See In re Marriage of Bauder,* 316 N.W.2d 697, 700 (Iowa Ct. App.1981). Despite the fact that John exhibited earlier deficiencies in child care, in the months since the parties' separated John has established a healthy relationship with Nicole. He has taken care of Nicole every weekend during the temporary visitation period. This is not the situation of a parent not truly performing the parenting role. John and Nicole often eat with Nicole's paternal grandparents on weekends, but the vast majority of the time they spend by themselves or with Nicole's playmates.

We are convinced that there is no valid reason to deny joint custody in this case. We conclude that Nicole's best interests will be served by allowing both of her parents to retain their legal rights and responsibilities as parents.

■ **Physical Care.** An award of joint custody, however, does not answer the question of where Nicole will live. Iowa Code section 598.41(4) provides:

> Joint legal custody does not require joint physical care. When the court determines such action would be in the child's best interest, physical care may be given to one joint custodial parent and not to the other. However, physical care given to one parent does not affect the other parent's rights and responsibilities as a legal custodian of the child.

In deciding upon physical custody, we review the factors set out in *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974). Both parents unquestionably love Nicole and have evidenced great interest in her welfare. Neither has a secure financial situation at the present time. Both depend on support from their parents. However, Debra has demonstrated a greater capacity and interest in providing and caring for Nicole over a longer period. Debra has shown herself through the testimony of friends to be a good parent.

We believe that Nicole's best interests will be served if Debra is given responsibility for Nicole's physical care.

■ **Visitation.** John argues that he should have been allowed more visitation. He feels that he should have closer to equal time with Nicole and specifically requests visitation similar to that provided by the temporary visitation order.

We agree with the trial court's determination as to John's alternate weekend visitation rights. Visitation every other weekend provides John regular opportunities to be with Nicole day and night while allowing Debra to have weekend time with Nicole also. Because Debra has primary physical custody, she is entitled to enjoy weekend time with Nicole. *See In re Marriage of Weidner,* 338 N.W.2d 351, 359 (Iowa 1983). We also find that the decree fairly apportioned between the parents the time they would be with Nicole on holidays.

■ However, we modify the trial court's determination as to John's midweek visitation rights. The trial court apparent-

ly reasoned that midweek visitation would also be confusing and unsettling to Nicole. In this case where Debra works evening shifts, an especially good opportunity is present for Nicole to spend more time with her father instead of a babysitter. Visitation should include not only weekend time, but time during the week when not disruptive to allow the noncustodial parent the chance to become involved in the child's day-to-day activity as well as weekend fun. *But cf., In re Marriage of Fish,* 350 N.W.2d 226 (Iowa 1984).

We conclude that John is entitled to continue his Wednesday evening visitations with Nicole from 4:30 p.m. until 8:30 p.m.

**Attorney Fees.** In evaluating a request for attorney fees on appeal, the court must consider the needs of the party making the request and the ability of the other to pay. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa Ct.App.1981). We order each party to pay their own attorney fees.

AFFIRMED AS MODIFIED.