In re the MARRIAGE OF Patricia A. GARVIS and Gary J. Garvis.

Upon the Petition of Patricia A. Garvis, Petitioner-Appellee,

And Concerning Gary J. Garvis, Respondent-Appellant.

No. 85–1349.

Court of Appeals of Iowa.

June 24, 1987.

Ray Sullins of Riemenschneider, Rydell & Smalley, Des Moines, for respondent-appellant.

Mark C. Smith, Des Moines, for petitioner-appellee.

Heard by DONIELSON, P.J., and SNELL and SCHLEGEL, JJ.

**DONIELSON, Presiding Judge.**

The respondent former husband appeals from the trial court's ruling on both parties' applications to modify the decree dissolving the parties' marriage. Respondent asserts: (1) that the trial court should have set up a joint custody arrangement and given him physical care of the children; (2) that the trial court should not have increased his child support obligation from ten to twelve months a year; (3) that the trial court should not have provided for yearly cost-of-living adjustments to his child support obligation; and (4) that the trial court should not have required him to pay all of the children's transportation expenses for visitation. We affirm.

The marriage of petitioner Patricia A. Garvis and respondent Gary J. Garvis was dissolved by decree in August 1980. Patricia was given custody of the parties' three children: Scott, born in 1973; Angela, born in 1975; and Chad, born in 1978. Gary was to have visitation of every other weekend, certain holidays, vacations, and birthdays, and one month in the summer. Gary was directed to pay all of the children's transportation expenses for visitation and $200.00 per month child support except during Gary's summer visitation.

On August 22, 1983, pursuant to the parties' stipulation, the trial court modified the decree to provide that Gary would have visitation of one weekend a month, certain holidays and vacations, and two months in the summer. The modification also provided that Gary was to pay the children's transportation expenses for all but the weekend visitations. Patricia had moved to Minnesota with the children at that time.

In November 1984, Patricia obtained a district court order in Minnesota which effectively stayed Gary's visitation rights *ex parte*, pending a December 1984 hearing. Prior to the Minnesota hearing, Gary filed an application for contempt and a separate application to modify the custody provisions of the decree as previously modified. Subsequently, Gary amended his application for modification, alleging that Patricia's conduct in interfering with Gary's visitation justified a change from sole custody in Patricia to joint custody, residence of the children to remain with Patricia, and requesting the court to enjoin Patricia from any further attempts to disrupt the continuing relationship between Gary and the children. Patricia subsequently filed a resistance to Gary's application, which included an application to modify seeking an increase in child support.

On January 7, 1985, a hearing was held on Gary's application for contempt. The district court found Patricia in contempt, but did not impose incarceration due to the adverse effects it would have had on the children. The court, however, did grant Gary extended holiday visitation. Trial was subsequently held on the applications for modification. The trial court denied Gary's request for joint custody, but implicitly ordered Patricia to operate in a more cooperative spirit with Gary. The trial court increased Gary's summer visitation to two months and a week. It increased Gary's obligation for child support to twelve months a year and provided for yearly cost-of-living adjustments to it. Gary has subsequently appealed.

Our scope of review is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7). Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties in this case. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). Our paramount consideration in determining custody and support is the best interests of the children involved. *Id.*

We first address Gary's argument that the trial court should have set up a joint custody arrangement and given him physical care of the children. In considering a modification of an initial award of custody, the court looks for a material and substantial change in circumstances. *In re Marriage of Dethrow*, 357 N.W.2d 44, 45 (Iowa App.1984). In the present case, the original decree granting custody to Patricia was rendered in 1980, with a subsequent modification in 1983. Since the filing of the original decree in 1980, the Iowa legislature in 1984 amended Iowa Code section 598.41. In *Dethrow*, we noted that Iowa Code section 598.41 was enacted and went into effect in 1982, after the initial decree was rendered in 1980 and before the modification decree was rendered in 1983. 357 N.W.2d at 46. Section 6 of the Acts of 1984, Ch. 1088 stated that "[t]he enactment of subsection 1 of section 598.41 constitutes a substantial change in circumstances authorizing a court to modify a child custody order pursuant to section 598.21 and chapter 598A." *Id.* In addressing the issue of the burden of proof on a petition to change sole custody to joint custody in cases where the initial decree was rendered prior to the change in statute, we held in *Dethrow* that the change in statute itself was a substantial change in circumstances which could justify modifying the initial decree. *Id.*

We also noted in *Dethrow* that Iowa Code section 598.41(2) now provides that any refusal to award joint custody must be justified by the trial court by citing clear and convincing evidence, pursuant to section 598.41(3), that joint custody is unreasonable and not in the best interests of the child. 357 N.W.2d at 46. While we recognize that the change in the aforementioned statute in itself constitutes a substantial change in circumstances, we believe the trial court's findings clearly illustrate that clear and convincing evidence exists that joint custody would be unreasonable and not in the children's best interests.

Section 598.41(3) provides eight factors the court must consider when determining whether joint custody is reasonable. Section 598.41(3) provides, in pertinent part:

3. In considering what custody arrangement under subsection 2 is in the best interests of the minor child, the court shall consider the following factors:

a. Whether each parent would be a suitable custodian for the child.

b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.

c. Whether the parents can communicate with each other regarding the child's needs.

d. Whether both parents have actively cared for the child before and since the separation.

e. Whether each parent can support the other parent's relationship with the child.

f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.

g. Whether one or both the parents agree or are opposed to joint custody.

h. The geographic proximity of the parents.

In applying the above factors to the present case, the trial court observed that the "record is replete with instances where one parent did not support the other parent's relationship with the children." The court noted that while both parties stated that they could communicate with each other regarding the children's welfare, their record of performance belied these statements. The trial court found both parties to be completely unwilling to cooperate with each other and that both parties mistrust each other deeply. The trial court concluded that pursuant to the factors enumerated in section 598.41(3), joint custody would be unreasonable under the circumstances. We agree.

Whether parents can communicate with each other regarding the child's needs is an important factor to be considered by the trial court in determining whether joint custody is in the children's best interest. *In re Marriage of Ertmann*, 376 N.W.2d 918, 920 (Iowa App.1985). Without question, cooperation and communication between parents is essential in joint custody arrangements. However, "our legislature was aware that in a divorce parties are generally not getting along well and a custody contest magnifies the adversarial nature of the dissolution proceeding." *Ertmann*, 376 N.W.2d at 920. In order to justify a demand of joint custody, a lack of ability to communicate must be something more than the usual acrimony which accompanies a divorce. *Id.*

While we need not encumber this opinion with the details of each unpleasant event which followed the parties' marital dissolution, certain matters must be highlighted to underscore our decision that joint custody would not be reasonable in the present case. Patricia has on numerous occasions attempted to unilaterally veto Gary's visitation rights. In the most striking example, Patricia attempted to secure an *ex parte* order from a Minnesota district court to enjoin Gary from exercising any visitation. The record reveals that Patricia has attempted to sway the children's opinion against their father. This is evidenced by their daughter, Angela's, statement to Dr. Roland, a psychiatrist, that "dad doesn't pay our bills and mom has to pay for everything," and "dad is mean to her ... she has to sell things she really likes...." Patricia often vented her anger and resentment against Gary in front of the children. More seriously, Patricia alleged that Gary had sexually abused their daughter, Angela, though it is uniformly found that such allegations were unfounded. Patricia also alleged that Gary had sexual relations with his new wife in front of the children, although extensive interviews with the children by Dr. Roland and Dr. David Bethel found that such allegations were also unfounded.

Gary has also vented his anger against Patricia in front of the children. Gary has also exhibited a deep mistrust for Patricia, admitting that he taped conversations between Patricia and Laurene, Gary's present wife, and between Patricia and the children, without anyone's knowledge or consent. Gary additionally enrolled Angela in summer school while Angela was in Patricia's sole custody without consulting Patricia, and in direct opposition to the recommendations of Angela's school teachers.

We also give weight to the conclusions of Drs. Roland and Bethel regarding the eventual success of a joint custody relationship between Patricia and Gary. Dr. Roland concluded that although all three children interact with either parent alone in a reasonably normal and healthy fashion, "the unresolved anger and animosity between the parents continues to have an unsettling and destabilizing affect on the three minor children." Dr. Roland further concluded that "[p]roblems regarding visitations, un-

substantiated allegations of physical and sexual abuse ... and the angry exchange between the biological parents at the time of transitioning the children from one parent to the other ... have had a demoralizing and destabilizing effect on the three children." Dr. Roland testified at trial that though both parties had the capability of handling a joint custody arrangement, the chances were actually slim that such an arrangement would be successful. Additionally, Dr. Roland, in his psychological report to the court, stated that both Patricia and Gary's personalities would make them poor candidates for successful therapy.

Based on these facts, we reluctantly but firmly conclude that the circumstances presented to us in this case are not conducive to a workable joint custody arrangement which would be in the best interests of the parties' children. Having determined that joint custody is factually inappropriate in this case, we must next determine whether Gary has met his burden of showing that he, rather than Patricia, should have custody of the three minor children.

■ It is undisputed that both Gary and Patricia would be capable of ministering to the needs of the children. When both parents are fit and proper persons to have custody, we must decide in whose custody the long-range interests of the children will be better served. *Weidner*, 338 N.W.2d at 359. As we noted earlier, once custody has been placed with one parent, we will generally not disturb the custody award unless for the most cogent reasons. The record reveals that all three children have developed adequately under Patricia's care, and all three children appear to have a solid, stable relationship with their mother. We also note that two of the children, Scott and Angela, have expressed a desire to remain with Patricia. Gary also stated in the hearing on his application for modification that he believed that the children should primarily be with Patricia. Because we believe that children need a stable and secure home, transferring custody to Gary would wreak further havoc on the day-to-

day lives of the children. We therefore conclude that custody should remain with Patricia.

In addition, we find it necessary to comment on the actions of both Patricia and Gary. While we recognize that a dissolution of marriage is painful for all parties involved, whatever discord that may exist between Patricia and Gary must end when the well-being of their children is involved. While neither party's conduct has been exemplary, we are especially appalled at Patricia's attempts to alienate the children from their father. Our statutes recognize that it is in the best interests of the children that they be afforded maximum contact with *both* parents. Patricia's serving of the children with subpoenas to testify at trial on her behalf and against their father is but one example of Patricia's attempt to frustrate this intent. We strongly condemn any further action by either Patricia or Gary to interfere with the exercise of visitation by either. We specifically enjoin Patricia from interfering in any way with Gary's rights regarding visitation, and should such an event occur, appropriate action may be taken at that time.

■ We next address Gary's argument that the trial court should not have increased his child support obligation from ten to twelve months per year. To reach a just and equitable determination as to the level of child support, the court may consider the parties' ages, present earning capacity, future prospects, amount of resources owned by each or both parties, the contributions of each to the parties' accumulations, the duration of the marriage, and the indebtedness of each or both. *In re Marriage of Byall*, 353 N.W.2d 103, 107 (Iowa App.1984); Iowa Code § 598.1(2) (1985).

■ In the present case, the record reveals that Patricia's net income is $860.00 per month. Gary's net monthly income is approximately $1,187.00. Gary's present wife's gross income in 1984 was approximately $12,778.00. While Gary's present wife has no obligation to support the parties' children, we may consider Gary's overall financial condition, including the fact that his second wife is employed, in fixing

the amount of support Gary should pay. *Page v. Page*, 219 N.W.2d 556, 558 (Iowa 1974). The original dissolution decree provided that Gary was excused from paying child support during the one month of summer visitation. By stipulation, the parties agreed in 1983 to extend Gary's summer visitation to two months. In its modification decree, however, the trial court determined that Gary's $200.00 per month child support payments should be extended to twelve months. We agree.

The Iowa Supreme Court has recognized that the expenses of maintaining a home for the custodial parent and the children will continue despite the children's absence during visitation to the noncustodial parent. *In re Marriage of Schlenker*, 300 N.W.2d 164, 167 (Iowa 1981); *In re Marriage of Fleener*, 247 N.W.2d 219, 221 (Iowa 1976); *In re Marriage of Glass*, 213 N.W.2d 668, 671 (Iowa 1973). The only difference is in food and incidental expenses. *See Fleener*, 247 N.W.2d at 221. Given Gary's overall superior financial condition, we conclude the trial court did not err in extending Gary's child support payments to twelve months.

Gary additionally argues that the trial court erred in providing for a cost-of-living adjustment (COLA) based upon increases in Gary's salary. Gary contends that Patricia has failed to present any real evidence that the cost of providing for her children has increased from the time of the original decree, and does not take into account any further increases in Patricia's income.

We find the cost-of-living adjustment clause provided for in the modification decree to be equitable under the circumstances of the present case. The COLA formula formulated by the trial court is essentially similar to the formula approved by the Iowa Supreme Court in the case of *In re Marriage of Stamp*, 300 N.W.2d 275, 279–80 (Iowa 1981). The *Stamp* court took judicial notice of the reduced purchasing power of the dollar due to inflation. 300 N.W.2d at 279. While the court in *Stamp* recognized that COLA formulas may not be appropriate in all cases, the court noted that in particular circumstances a COLA provision (1) gives due regard to the actual needs of the children; (2) requires only a simple calculation based upon the consumer price index; (3) minimizes the risk of yearly resistance to increased support and diminishes the attendant legal expenses and animosity; and (4) in no way infringes upon the rights of either the custodial parent or the noncustodial parent to petition the court for modification of the decree due to a substantial and continuing change of circumstances. *Id.*

Like the parties in *Stamp*, Patricia and Gary's employment history is stable. Gary's gross salary is readily obtainable without resort to tax returns. The trial court also recognized that Gary's income as a painter is affected by weather and the availability of projects and provided that if Gary's gross income is lower in proportion to the consumer price index, the child support payments would be increased by this lesser percentage. Given the bitter acrimony between the parties and taking judicial notice of the eroding value of the dollar, we believe the COLA formula adopted by the trial court is just and equitable under the circumstances.

Gary lastly asserts that the trial court should not have required him to pay all of the children's transportation expenses for visitation. We find no merit in such argument. Contrary to Gary's argument, Gary and Patricia's obligations to provide the expenses for transportation of the children for visitation has not been reversed. Pursuant to the stipulation entered in 1983, Patricia was to pay the transportation expenses for the children's visit with their father the second weekend of each month. Gary was to pay the transportation expenses for various holiday visitations, plus summer vacation. The stipulation, however, was silent as to availability of visitation by Patricia during the summer months when the children are with Gary. The modification decree therefore provided that Patricia be afforded visitation the third and sixth weekends of the summer visitation period, extended Gary's summer visitation by one week, and ordered that Gary pay

the transportation expenses to and from Patricia's home. Gary does not contend that such weekend visits are unwarranted. We therefore find the order requiring Gary to bear the expense of transportation of the children to Patricia's home for two summer weekend visits equitable under the circumstances.

Costs in this appeal are taxed to Gary.

AFFIRMED.