# IN THE COURT OF APPEALS OF IOWA

No. 20-0597
Filed March 17, 2021

**ABBIGALE JO COUREY,**
    Plaintiff-Appellee,

**vs.**

**TRAELIUS ANTHONY ROBINSON,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Woodbury County, Tod Deck, Judge.

A father appeals the district court order placing legal custody and physical care of his minor child with the child's mother. **AFFIRMED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Nick E. Wingert of Mayne, Hindman, Daane, Parry & Wingert, P.C., Sioux City, for appellee.

Considered by Doyle, P.J., and Tabor and Ahlers, JJ.

**AHLERS, Judge.**

The parties to this proceeding are the mother and father of A.R., a minor child. In this dispute between the mother and father, the district court placed legal custody and physical care of A.R. with the mother. The father appeals, arguing the district court erred by (1) failing to grant the parties joint legal custody; (2) failing to grant the parties joint physical care; and (3) failing to grant the father a right of first refusal to care for A.R. at times when the mother is unable to care for the child during the mother's parenting time. The father further argues that, in the event we uphold the current legal custody and physical care arrangements, he should receive more visitation time with A.R. Finally, the mother requests appellate attorney fees.

## I. Background

A.R., was born in 2018. At the time of trial, the mother and father were both twenty years old. The parents were never married and lived together for a time after the child's birth. After ending their cohabitation, the parents went through an "on again, off again" relationship that generally ended about ten months prior to trial, although the district court found the two had made attempts to reconcile since then. The mother eventually moved into a guest house on her parents' property and the father moved into his grandmother's house in South Dakota.

The mother filed a petition seeking a legal custody determination and requesting physical care of A.R. (the custody case). While the custody case was pending, the mother filed a petition seeking relief from domestic abuse against the father (the domestic abuse case). The domestic abuse petition alleged the father threatened to harm and kill her and her family multiple times. Following a hearing,

the district court entered a final protective order finding the father had committed domestic assault and represented a credible threat to the mother. The order granted the parties "joint or shared care" of the child. In doing so, however, the district court[1] specifically acknowledged the pending custody case and noted that its custody determination in the domestic abuse case "should be given limited if any precedential value or preclusive effect as to the long-term best interests of the child."

The custody case proceeded to trial approximately six months after the entry of the final protective order in the domestic abuse case. The hearing was combined with a contempt action the father filed in the domestic abuse case related to the mother refusing to give him the child during his first scheduled time with the child after the entry of the final protective order. Following trial, the district court issued an order in the custody case granting the mother legal custody and physical care of the child. Regarding the contempt claim in the domestic abuse case, the district court found the mother in contempt for improperly withholding the child from the father during his parenting time. The father appeals.

## II. Standard of Review

We review child custody decisions de novo. *In re Marriage of Hansen*, 733 N.W.2d 683, 690 (Iowa 2007). "Although we give weight to the factual findings of the district court, we are not bound by them." *In re Marriage of Mauer*, 874 N.W.2d 103,106 (Iowa 2016).

---

[1] The district court judge who entered the final protective order in the domestic abuse case was a different judge than the judge who issued the final order in the custody case that is the subject of this appeal.

### III. Legal Custody

The father first argues the district court erred by awarding legal custody of A.R. to the mother rather than awarding the parents joint legal custody. Under a joint legal custody arrangement, both parents have the right and responsibility to make "decision[s] making affecting the child's legal status, medical care, education, extracurricular activities, and religious instruction." Iowa Code § 598.1(3) (2020). When making a custody determination, our primary consideration is the child's best interest. *Id.* § 598.41. Joint legal custody is strongly preferred to awarding one parent custody, and, if joint legal custody is requested, the district court must award it unless clear and convincing evidence shows joint legal custody is unreasonable. *Id.* § 598.41(2)(b). In determining whether joint custody is appropriate, we consider the factors listed in Iowa Code section 598.41(3). *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988) (holding the legal analysis used in determining the custody of a child born out of wedlock is the same as the analysis used in making such determination with a child born to a married couple); *see also* Iowa Code § 600B.40 (providing section 598.41 shall apply in determining custody and visitation arrangements of a child born out of wedlock). One factor is whether a history of domestic abuse exists between the parents. *Id.* § 598.41(3)(j). If there is a history of domestic abuse between the parents, that factor "outweigh[s] consideration of any other factor . . . in the determination of the awarding of custody" under section 598.41. *Id.* § 598.41(2)(c). Another factor is whether the parties can communicate with each other regarding the child's needs. *Id.* § 598.41(3)(c).

The father argues on appeal that the district court improperly relied on section 598.41(3)(j) to award the mother legal custody of A.R. We disagree. Like the district court, we conclude the father's behavior throughout these proceedings demonstrates a history of domestic abuse sufficient to show joint legal custody is unworkable and not in the child's best interests. His conduct also shows that communication with him to make joint decisions will be nearly impossible. Throughout these proceedings and at least since A.R. was born, the father has been physically and emotionally abusive to the mother. The record details numerous threatening phone calls and text messages in which the father insults the mother, threatens to hurt or kill the mother if she did not do what he wanted (including getting back together with him), threatens to hurt or kill any other man with whom the mother becomes involved, threatens to hurt or kill the mother's family, calls the mother vile names, threatens to withhold A.R. and turn A.R. against the mother, and encourages the mother to commit suicide. The father's statements go well beyond the usual level of acrimony found between parents in such disputes. *See In re Marriage of Ertmann*, 376 N.W.2d 918, 920 (Iowa Ct. App. 1985) (noting some acrimony is to be expected and tension alone is not sufficient to demonstrate joint custody will not work).

Furthermore, the father backed up his grossly inappropriate and alarming statements with violent actions against the mother and other people on a number of occasions throughout their relationship and after it ended. During one incident, the father shoved her to the ground outside a bar. The day A.R. was born, when the father was not getting his way over what last name to give the child, he instigated an altercation at the hospital that escalated to the point the father nearly

got into a fight with a hospital security officer. After he and the mother broke up, he broke into and vandalized the mother's residence. Later, he violated the protective order and was sentenced to serve time in jail. Most recently, the father was convicted of carrying a dangerous weapon.

Several of the father's interactions with the mother over the phone were recorded. Listening to the father's behavior in those recordings is exhausting. Besides the near constant stream of threats and name-calling unless the mother would agree with him, when the mother would try to state even a word of explanation or disagreement, the father would routinely cut her off immediately, shout over the top of her, and then continue with threats until the mother would agree or end the call. The district court concluded the father's behavior "would not only make the decision-making necessitated by joint legal custody nearly impossible, but it would actually make it dangerous to" the mother. We agree. It would not be in the child's best interests to be placed in a situation where the mother would be required to endure the father's behavior and conduct to make the decisions needed if joint legal custody was granted. The father's history of domestic abuse and his complete inability or unwillingness to communicate in an acceptable manner rebuts any presumption in favor of joint legal custody and necessitates granting the mother legal custody.

## IV. Physical Care

Having concluded joint legal custody is not in A.R.'s best interest, we next consider what physical care arrangement is appropriate. The father argues he and the mother should have received joint physical care.

Our objective at this step is "to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). We begin our inquiry by assessing four non-exclusive factors:

> The factors are (1) "approximation" – what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *Hansen*, 733 N.W.2d at 697–99). Here, all four factors weigh in favor of placing physical care with the mother. The mother has been A.R.'s primary caregiver throughout the child's life, and cares for A.R. even when she is at work. As previously detailed, the father cannot communicate adequately with the mother regarding A.R.'s care and, as evidenced by his many threatening, insulting messages and statements to the mother, does not respect her as a co-parent of their child. The mother testified to asking the father at various times about where A.R. was or why A.R. had been returned to her care with injuries. The father either ignored the mother's messages or dismissed her concerns.

Further cutting against a joint physical care arrangement is the significant distance between the parents and the father's willingness to accept work overseas. *See Thorpe v. Hostetler*, 949 N.W.2d 1, 6 (Iowa Ct. App. 2020) ("Because the parents now reside an hour drive apart, the shared-care arrangement is now unworkable and not in the best interests of the child."). The distance from the mother's home in Iowa and the father's home in South Dakota is over one hundred

miles. Coupled with the parents' inability to communicate effectively, decisions regarding A.R.'s routine care are all but impossible to make jointly. Additionally, as the district court noted in its order, the father has expressed a willingness to move overseas to play professional basketball, which could take him out of the United States for months at a time.

We agree with the district court and conclude that placing physical care with the mother is in A.R.'s best interest.

## V. Visitation

Next, the father argues he should be given additional visitation time. The district court's order provides the father with visitation every other weekend, every Wednesday night, and holiday and summer visits. The court's order provides that the father may have additional visitation beyond those times if the parents agree. The father maintains that he should have A.R. for one week every other week. However, such an arrangement would essentially amount to providing the father with joint physical care, which we have already determined would not be in A.R.'s best interest. *See, e.g.*, *Petersen v. Nielsen*, No. 17-0135, 2017 WL 2876103, at *3 (Iowa Ct. App. July 6, 2017) (declining to award a father a visitation schedule of "seven overnight visits over a fourteen-day period" because the father's "request for expanded visitation essentially asks to have the children one-half of the time, which would be a joint physical care arrangement"). As such, we find no reason to amend the visitation schedule.

## VI. Right of First Refusal

The final issue the father raises is whether he should be granted the right of first refusal, meaning the right to be notified and given the opportunity to have

the child in his care if the mother is not going to have the child in her care during her time with the child. The mother received a right of first refusal to care for A.R. during the father's time in the event the father is unable to take care of A.R. during his scheduled time. The father argues he should have received the same right for when the mother is unable to care for A.R. during her scheduled time. However, the father did not request a right of first refusal at the district court, and, after the court ruled, the father did not file a motion pursuant to Iowa Rule of Civil Procedure 1.904(2) asking the court to address the issue.[2] Having not raised this issue at the district court, error is not preserved so as to permit us to address it on appeal. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal.").

Even if we were to address the issue on the merits, we would not grant the father a right of first refusal under these circumstances. Granting such a right would necessarily require the mother to provide information to the father as to her activities. Given the father's demonstrated history of controlling, threatening, and jealous behavior, nothing good could come from providing such information to the father. The district court did not err in failing to grant the father a right of first refusal.

---

[2] The father filed a rule 1.904(2) motion after the district court's ruling, but the motion did not raise this issue. Furthermore, the father abandoned the motion by filing notice of appeal before the district court could rule on the motion. *See Freer v. DAC, Inc.*, 929 N.W.2d 685, 687–88 (Iowa 2019) ("A moving party is deemed to have waived and abandoned a posttrial motion when that party files a notice of appeal.").

### VII.    Appellate Attorney Fees

Lastly, the mother requests an award of appellate attorney fees. Iowa Code section 600B.26 permits the court to award reasonable attorney fees to the prevailing party. The standards applicable to an award of attorney fees under Iowa Code chapter 600B are the same as those that apply to a dissolution of marriage action pursuant to chapter 598, except they are limited to being awarded only to the prevailing party. *See Markey v. Carney*, 705 N.W.2d 13, 25 (Iowa 2005). "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Hoffman*, 891 N.W.2d 849, 853 (Iowa Ct. App. 2016) (quoting *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997)). Although the mother is the prevailing party and is thus statutorily eligible for an award of attorney fees, we decline to order the father to pay the mother's attorney fees on appeal due to the father's meager ability to pay. However, costs of the appeal are assessed to the father.

**AFFIRMED.**