# IN THE COURT OF APPEALS OF IOWA

No. 21-0822
Filed February 16, 2022

IN RE THE MARRIAGE OF LAUREN NYGREN
AND TREY NYGREN

Upon the Petition of
**LAUREN NYGREN,**
        Petitioner-Appellee,

**And Concerning**
**TREY NYGREN,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Scott County, Patrick McElyea,

Judge.


        A father appeals from the modification of a joint physical care arrangement.

**REVERSED.**


        Chase Cartee of Cartee Law firm, P.C., Davenport, for appellant.

        M. Leanne Tyler of Tyler & Associates, P.C., Bettendorf, for appellee.


        Considered by Schumacher, P.J., and Ahlers, J., and Vogel, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2022).

**SCHUMACHER, Presiding Judge.**

Trey Nygren appeals from the modification of a joint physical care provision. Upon our de novo review, we find there has not been a substantial and material change in circumstances warranting modification of the physical care provision of the parties' original decree. Accordingly, we reverse.

## I.      Facts & Proceedings

Trey Nygren and Lauren Underwood, formerly known as Lauren Nygren, entered into a stipulation to dissolve their marriage. The stipulation incorporated an agreement for joint legal custody and joint physical care, along with a parenting plan for their only child, T.N., born in 2017. This stipulation was adopted by decree filed on July 8, 2019. Trey had parenting time with the child every Wednesday and Thursday, as well as every other weekend. On the weeks he did not have weekend parenting time, Trey had parenting time with T.N. from Wednesday to Friday. On days other than those awarded to Trey, Lauren had parenting time. The decree afforded both parents specific vacation time with the child and designated holidays. Trey was ordered to pay child support and Lauren was ordered to pay the expenses incurred from daycare and school activities. The parties were ordered to split medical costs incurred for T.N.

At the time of the modification trial, both Trey and Lauren had entered into other relationships and were residing with their significant others. Both individuals were reported to be positive influences on T.N. Trey and his significant other have a five-month-old baby together. Trey's significant other also has two daughters she shares custody of with her ex-husband. T.N. is the only child that resides in

Lauren's home. The record reflects that T.N. is an intelligent, well-mannered child that is bonded to both his mother and father.

Trey and Lauren live roughly thirty minutes apart. Lauren lives within walking distance of the school the child will likely attend. The parties agreed as to the school district for T.N. in the original decree and such is not an issue for this appeal. Lauren works in real estate. At the time of trial, Trey was employed at a long-term care facility doing maintenance work, directing activities, and assisting in a memory care unit. He passed his boards a few weeks prior to trial to become a physician assistant.

Six months after the entry of the original dissolution decree, Lauren filed a petition for modification of the physical care provision of the decree. She alleged, among other things, Trey did not communicate effectively with her, Trey caused their child to be late or miss daycare, Trey did not attend medical appointments, and Trey failed to utilize his allotted summer vacation time. Lauren also filed an application for rule to show cause, arguing Trey should be held in contempt for failing to pay child support and his share of the child's medical bills.

A trial was held on March 30 and 31, 2021. At the time of trial, T.N. was three years old. Lauren requested that the joint physical care arrangement be modified to award her physical care. Trey requested that Lauren's petition be dismissed or that the court consider awarding Trey physical care.[1] The district court summarized the factual disputes between the parties as "Lauren feels as though Trey is not doing enough or involved enough as a father." The district court

---

[1] On appeal, Trey argues only that the court erred in modifying the joint physical care arrangement.

noted that "this is a very, very difficult case" because "both parents are very good parents . . . [who] are smart, capable, and loving." The court found that there had been a substantial change in circumstances and awarded Lauren "primary physical care."[2] The court noted the most obvious challenge since the entry of the decree was the impact of a global pandemic, but did not believe such would be long term. The court determined that Lauren was in a better situation to provide more stability and continuity than Trey. The court determined that Trey had not willfully disobeyed the court order to pay child support and medical bills. Trey appeals the court's modification ruling.

## II.    Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity. Thus, we review the district court's decision de novo. Though we make our own findings of fact, we give weight to the district court's findings." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016) (quotation marks and citations omitted). "Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). "The controlling consideration in child custody cases is always what is in the best interests of the [child]." *In re Marriage of Thielges*, 623 N.W.2d 232, 235 (Iowa Ct. App. 2000) (quoting *In re Marriage of Swenka*, 576 N.W.2d 615, 616 (Iowa Ct. App. 1998)).

---

[2] We interpret the court's order as granting Lauren physical care of the child, while providing Trey liberal visitation. *See* Iowa Code §§ 598.1, .41 (2020).

## III.    Discussion

Trey alleges the district court erred in determining a substantial and material change of circumstances existed that warranted modification of the joint physical care arrangement.  Both Trey and Lauren request appellate attorney fees.

### A.    Modification of Physical Care

The legal framework for determining whether to modify a physical care provision of a dissolution decree is well established:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change.  The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.  They must relate to the welfare of the children.  A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being.  The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *see also Harris*, 877 N.W.2d at 440.

Lauren points to three broad factors to demonstrate a substantial change in circumstances: (1) the difficulty Lauren and Trey have in communicating; (2) Trey's lack of involvement in their child's medical appointments, daycare, and extracurricular activities; and (3) Trey's failure to pay child support and medical bills.[3]  Trey characterizes Lauren's allegations as relating to his struggles in

---

[3] Neither party alleges that the slight increase in distance between the parties' respective homes is a substantial and material change of circumstances.  The parties' residences both remain in Scott County, as was the case at the time of the original dissolution decree.

passing his licensing exam. We determine that Lauren's evidence admitted at trial does not rise to the level of a substantial and material change of circumstances that is permanent and not within the contemplation of the original trial court. We further determine that the record does not support that modification of the joint physical care arrangement is in T.N.'s best interest.

As reflected in this record, the COVID-19 pandemic has complicated the parties' joint parenting agreement. To be certain, when the decree was entered in 2019, the district court and the parents could not have anticipated or developed a playbook for co-parenting in a global pandemic. Trey believed the child should stay with him during the day when he was not working to limit exposure, while Lauren believed that daycare and the hiring of a private teacher was more appropriate. Outside of the COVID-19 issue, neither party's communication to the other parent has been perfect. Trey has not always informed Lauren when he plans to keep the child at home with him rather than taking the child to daycare. Trey does not check his email every day, which is one of the parties' forms of communication. Trey did not immediately update Lauren with his new address. Lauren failed to inform Trey of a therapy consultation appointment for the child until after the fact. And, as the district court noted, there are times when Lauren could allow some latitude and Trey could make an effort to plan.

Our courts have recognized that difficulty communicating between parents can constitute a change of circumstances. *See Harris*, 877 N.W.2d at 441 ("An important factor to consider . . . is the ability of the spouses to communicate and show mutual respect." (quotation and citation omitted)). Although difficulty communicating certainly makes joint physical care difficult, "[t]o be significant

enough to justify a denial of joint [physical care], a lack of ability to communicate must be something more than the usual acrimony that accompanies a divorce." *In re Marriage of Ertmann*, 376 N.W.2d 918, 920 (Iowa Ct. App. 1985); *see also Armstrong v. Curtis*, No. 20-0632, 2021 WL 210965, at *2 (Iowa Ct. App. Jan. 21, 2021) ("Tension between the parents is not alone sufficient" to warrant modification).

Modification may be proper when the evidence shows animosity that goes beyond communication difficulties. *See Tressel v. Kuehl*, No. 18-1189, 2019 WL 1294216, at *3 (Iowa Ct. App. Mar. 20, 2019) (holding that the assault of the mother by the father in the child's presence and issuance of a no-contact order preventing contact between the parents warranted modification of a shared physical care arrangement); *In re Marriage of Malloy*, No. 16-0274, 2016 WL 7404611, at *5 (Iowa Ct. App. Dec. 21, 2016) (denying request for modification of shared physical care based on mother's allegations that the father exercised inconsistent and unannounced visits that interrupted the children's lives). Furthermore, the animosity must have "a disruptive effect" on their child's life. *See Melchiori*, 644 N.W.2d at 368.

Lauren and Trey's communication difficulties do not rise to the level warranting modification. The record contains many text messages and email conversations demonstrating the parents are able to converse civilly about their child, ensuring they are each informed and able to meet the child's needs. *See Ertmann*, 376 N.W.2d at 920 (noting that a willingness to communicate for the sake of the child weighed against modification). The communication is frequent. Moreover, it appears both parents take active steps to avoid speaking negatively

of the other in front of their child and have instructed their significant others and extended family to refrain from such as well. Consequently, this is not a case where "[t]he depth of [the parents'] animosity toward each other is not lost on the [child]." *Harris*, 877 N.W.2d at 434; *cf. Malloy*, 2016 WL 7404611, at *5 ("The record reflects the children have thrived and maintained a close relationship with both parents.").

To both parents' credit, Trey and Lauren's disagreements do not appear to have a disruptive effect on their child. Both have worked diligently to keep their young child out of the middle and out of earshot of any disagreements. A school psychologist met with T.N. twice at Lauren's request. The psychologist testified he had no concerns about the child and that he is a "developmentally really strong little dude." Other witnesses described the child as intelligent for his age and happy. The record does not indicate that the parents' communication is having a negative impact on their child's development and well-being. *See In re Marriage of Dauterive*, No. 18-0381, 2019 WL 1056816, at *3 (Iowa Ct. App. Mar. 6, 2019) (finding the parents' disagreements did not warrant modification when the child's "well-being was [not] imperiled by the acrimony"). Lauren and Trey's communication does not result in a substantial and material change in circumstances. *See In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007) ("Physical care issues are not to be resolved based upon perceived fairness to the spouses, but primarily upon what is best for the child." (emphasis omitted)).

Similarly, Lauren's allegations of Trey's lack of involvement in organizing and participating in his child's medical care and extracurricular activities do not amount to a substantial and material change in circumstances. Trey admitted to

not attending all of the medical appointments if Lauren was present. However, this pattern has not impacted the child's welfare. Quite the opposite, Lauren and Trey's child was described at trial as outgoing, intelligent, happy, and healthy. T.N. has not suffered medically as a result of Trey's parenting. On these allegations, we determine a lack of a substantial and material change in circumstances warranting modification of the parties' joint physical care arrangement. We further determine that Trey's admission that he did not sign the child up for any extra-curricular activities does not equate to a substantial and material change in circumstances.

In reaching its decision, the district court focused on factors enunciated in *Hansen*: stability and agreement on child rearing practices. *See id.* at 696-99. While being careful to clarify that it was not finding Trey lacked stability, the court found, "Lauren will be in a better situation to provide more stability and continuity than Trey will." The court rested this finding on the fact that Trey is searching for a new job and may need to move in the future. We determine this does not rise to the level of a substantial and material change. The moving party bears a significant burden in a modification action. See Harris, 877 N.W.2d at 440 ("The party seeking to modify a dissolution decree thus faces a heavy burden . . . ."). Factors that may be important to an initial physical care determination may not be able to overcome the strong burden of proof necessary in a modification action. *See In re Marriage of Dethrow*, 357 N.W.2d 44, 45 (Iowa Ct. App. 1984) (distinguishing between the standards used in initial custody awards from the standard used in modifications of custody awards).

To the extent relevant to the instant modification, on the record before us, Trey has yet to obtain employment as a physician assistant. However, that issue

was squarely "contemplated by the court when the decree was entered." *See Frederici*, 338 N.W.2d at 158. For instance, the stipulation provided that Trey would be obligated to increase the amount of child support he paid after passing his boards and obtaining a job as a physician assistant. At the time of trial, Trey had not changed employment. We determine potential future employment without further information as to location and distance from Trey's current residence is not a substantial and material change in circumstances.[4]

The district court correctly noted that Lauren and Trey are largely in agreement over child-rearing practices. For instance, the parents agree on where their child should attend school. Both parents agree the other is loving and supportive of their child. The only notable disagreements on child rearing in the record before us, outside of the COVID-19 concerns, involve how to deal with their child's "sleep hygiene" and disagreement on Trey occasionally keeping T.N. out of daycare so the child could have more "dad days." No doubt, the parents have different parenting styles. However, the parents' general agreement on how to raise their child further supports maintaining joint physical care.

Trey was behind in child support payments and expenses for medical care at the time of trial. He attributes this to a delay in passing his boards. Lauren acknowledges such is not determinative of physical or shared care. While we do not condone this delinquency, the district court determined that Trey was not in contempt of court, and such finding has not been appealed.

---

[4] While the district court cited future employment for Trey as a basis for modification, Trey expressed intent to move closer to his son for work, rather than further away.

While there have been some minor changes in the parties' lives following the entry of the decree, on this record, we do not determine "that conditions since the decree was entered have so materially and substantially changed that the [child's] best interests make it expedient to make the requested change." *See id.* We also determine the evidence does not support finding a modification is in the child's best interest. We reverse the modification of the joint physical care arrangement.

**B.    Appellate Attorney Fees**

Both parties seek an award of appellate attorney fees. Iowa Code section 598.36 permits an award of attorney fees to the prevailing party. *In re Marriage of Minjares*, No. 19-0623, 2019 WL 6894283, at *2 (Iowa Ct. App. Dec. 18, 2019). "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We may consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *Id.* (citation omitted). Given these factors relative to these parties, we decline to award appellate attorney fees.

**REVERSED.**