# IN THE COURT OF APPEALS OF IOWA

No. 22-1393
Filed March 29, 2023

**IN RE THE MARRIAGE OF NICOLE A. HAPPEL AND BRIAN D. HAPPEL**

**Upon the Petition of**
**NICOLE A. HAPPEL, n/k/a NICOLE A. SHIMP,**
    Petitioner-Appellant/Cross-Appellee,

**And Concerning**
**BRIAN D. HAPPEL,**
    Respondent-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple, Judge.

Nicole Shimp appeals, and Brian Happel cross-appeals, the district court's modification of their dissolution decree. **AFFIRMED AS MODIFIED IN PART ON APPEAL; AFFIRMED AS MODIFIED ON CROSS-APPEAL; AND REMANDED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant/cross-appellee.

Lana L. Luhring of Laird & Luhring Law Office, Waverly, for appellee/cross-appellant.

Considered by Vaitheswaran, P.J., and Ahlers and Buller, JJ.

**VAITHESWARAN, Presiding Judge.**

Brian Happel and Nicole Shimp married in 2009 and divorced in 2017. The dissolution decree incorporated their agreement to exercise joint physical care of their three children on a two-day-two-day-three-day alternating schedule.

In time, Happel petitioned to modify the joint physical care provision of the decree. He alleged Shimp relocated from Cedar Falls to Parkersburg, "insisted the minor children be enrolled in Parkersburg schools," and "attempted to modify visitation and transportation arrangements . . . without success." He sought physical care of the children, subject to reasonable visitation with Shimp. Following a hearing, the district court granted the petition.

On appeal, Shimp contends Happel failed to establish a substantial change of circumstances warranting modification of the joint physical care arrangement and an ability to provide superior care and, alternatively, she should have been granted midweek overnight visits with the children. She also seeks appellate attorney fees. On cross-appeal, Happel asserts the district court's income determination underlying the child support calculation was incorrect, the court's holiday and summer visit schedules were inequitable, and the court gave conflicting instructions on the children's extracurricular activities.

## I.    *Physical Care*

"A party seeking modification of a dissolution decree" that provides for joint physical care must establish a substantial change in circumstances and "a superior ability to minister to the needs of the children." *In re Marriage of Harris*, 877 N.W.2d 434, 440 (Iowa 2016). The district court found a substantial change of circumstances based on (1) "[t]he expressed concerns of" one of the children and

"the demands of [Shimp] and her daycare"; (2) "[t]he distance [and travel time] from where [Shimp] now resides in Parkersburg, Iowa, and the school district as agreed upon by the parties in Cedar Falls, Iowa"; and (3) "the decline in the parties' ability to communicate." The court declined to find changed circumstances based on disagreements about the children's extracurricular activities. The court determined Happel was the superior caretaker and placement of the children in his physical care was in the children's best interests. Shimp takes issue with these findings.

Shimp changed her employment several times, first working for a church, then a social service agency, then a daycare center, and finally as a self-employed in-home daycare provider. When she worked for the social service agency, Happel agreed to change the joint physical care arrangement from the 2-2-3 day framework set forth in the decree to a 5-2-2-5 schedule, to accommodate Shimp's evening commitments. Although Shimp later expressed a desire to return to the 2-2-3 day schedule, she ultimately agreed to operate under the revised schedule. In short, Shimp's changed employment circumstances—even before she started the daycare business—resulted in an abandonment of the schedule to which the parties stipulated at the time of the dissolution proceeding.

The daycare business compounded the problem of maintaining a joint physical care arrangement. Shimp worked sixty-five hours per week, from at least 6:00 a.m. to 6:00 p.m. She admitted the older children expressed frustration with their inability to "do what they want[ed] to do when they want[ed] to do it." While their views and the desire of the youngest child to spend more time with his mother are not dispositive, there is no question Shimp's schedule and her responsibility for overseeing eight other children impeded her ability to attend to and transport

the children. As Happel testified, "she cites not being able to let the boys do different activities because of daycare, getting the boys late to school because of daycare, picking the boys up late from school because of daycare." Although Happel said he "made it work" and the children "adjusted," the joint physical care arrangement contemplated at the time of the decree was simply not feasible.

Shimp's multiple moves added to the difficulties. At the time of the divorce, Shimp lived in Cedar Falls. Following the divorce, she moved to Stout, then Aplington, and finally Parkersburg. Although none of the moves met the 150-mile discretionary threshold to find a substantial change of circumstances,[1] and Parkersburg was not so far away from Cedar Falls as to preclude joint physical care under different circumstances, the combination of Shimp's work hours and her "relocation triggered the need to abandon joint physical care." *See In re Marriage of Eggeling*, No. 18-0234, 2019 WL 478818, at *3 (Iowa Ct. App. Feb. 6, 2019).

We are left with the parents' communication difficulties. Texts and emails between the parents suggest the difficulties were not insurmountable. While both parents were sometimes brusque, they generally made an effort to communicate with each other about the children and their welfare.

There was one significant exception. The oldest child told his mother about trauma he experienced at the hands of another child. Shimp did not tell Happel. While Shimp contends she was trying to preserve the child's confidence as he demanded, she declined to discuss the issue with Happel even after Happel learned

---

[1] *See* Iowa Code § 598.21D (2021).

about it from the child. The district court found her "failure to promptly advise [Happel] of the incident violates every tenet of co-parenting and joint legal custody." We agree. Shimp's refusal to disclose the episode immediately after she was told about it left Happel wondering why his normally engaged child was suddenly secluding himself in his room. And her refusal to discuss the issue later, except in the presence of her church's members, called her concern about preserving the child's confidences into question. The episode cannot be written off as an isolated error in judgment.

On our de novo review, we conclude Shimp's multiple changes in employment, multiple moves, long work hours, and communication lapse amounted to a substantial change of circumstances not contemplated at the time of the dissolution decree. We turn to the second prong: proof of superior care.

Happel lived in Cedar Falls where the children went to school and where most of their extracurricular activities were based. Although his work hours as a realtor were sometimes unpredictable, he had greater flexibility to manage day-to-day duties involving the children than did Shimp. While he showed some inflexibility in his communications with Shimp, we agree with the district court that he was more likely to support the children's relationship with the other parent. On our de novo review, we conclude Happel established he was the superior caretaker. The district court acted equitably in modifying the joint physical care arrangement to grant Happel physical care of the children.

## II.    *Visitation*

The district court granted Shimp visits "every other weekend from Friday after school or 3:30 p.m." until they were delivered to their respective school on

Monday morning. The court also granted her summer weekend visits from Thursday evening until Monday morning and five "weeks of summer parental time." Finally, the court stated: "In the event [Happel's] holiday weekend occurs between his alternating weekends, [Shimp] shall be awarded a make-up weekend during one of [Happel's] subsequent weekends. [Shimp] shall designate within 30 days following the third consecutive weekend of [Happel] her desired make-up weekend."

Shimp argues the court should have additionally granted her mid-week overnight visits from Wednesday afternoon to Thursday morning. Happel counters that he should have received a weekend visit if one of his was usurped by a holiday and Shimp should not have received five weeks of summer visitation.

"Upon awarding one parent physical care, the district court shall award the other parent visitation that assures the children 'the opportunity for the maximum continuing physical and emotional contact with both parents.'" *In re Marriage of Gensley*, 777 N.W.2d 705, 717 (Iowa Ct. App. 2009) (quoting Iowa Code § 598.41(1)(a)). As Shimp points out, the failure to award midweek visits meant that she did not see the children for eleven days. That was a significant change from the 5-2-2-5 schedule the parents had been following. Under that schedule, Shimp exercised parenting time on Wednesdays and Thursdays. Although the children sometimes went to Happel's house on Wednesday early-out afternoons, they were accustomed to being with Shimp in the evenings and on Thursdays. Shimp testified she selected those days because she could "ensure that the children participate in church activities as they grow." She chose Thursdays to "prevent[] unnecessary exchanges." While the addition of Wednesday visits would

raise the specter of school pick-up and drop-off challenges, an eleven-day separation from the mother is problematic after the equal care time the children previously enjoyed. We reach that conclusion notwithstanding the lengthy weekend visit from Friday through Monday morning. *See In re Marriage of Hansen,* 733 N.W.2d 683, 702 (Iowa 2007) (granting the noncustodial parent 6:00 p.m. to 8:00 a.m. Wednesday overnight visitation); *In re Marriage of Toedter*, 473 N.W.2d 233, 235 (Iowa Ct. App. 1991) (modifying a dissolution decree to provide noncustodial parent with midweek overnight visitation together with alternating weekends); *In re Marriage of Ertmann*, 376 N.W.2d 918, 922 (Iowa Ct. App. 1985) (modifying dissolution decree to provide for midweek visitation).

On our de novo review, we modify the visitation provision of the modified decree to grant Shimp midweek visits from Wednesday after school or from 9:00 a.m. if there is no school until school begins on Thursday morning or if no school on Thursday, until 9:00 a.m.

As noted, Happel argues the district court failed to give him the same opportunity afforded Shimp to have a make-up weekend when her weekend visit fell on a holiday weekend assigned to Happel. But, as primary caretaker, he had regular contact with the children, even when his weekend visit fell on a holiday assigned to Shimp. As noncustodial parent, Shimp stood to lose contact with the children for a lengthy period of time if one of her weekend visits fell on Happel's holiday. We conclude the district court acted equitably in declining to include the same provision for Happel.

Finally, Happel seeks a reduction of the summer visitation granted Shimp from five weeks to three weeks. In support of his request, he reprises most if not

all the arguments he raised for affirming the physical care determination. In our view, those contentions carry far less weight in the visitation calculus where, as noted, the goal is to "assure[ ] the opportunity for maximum continuous physical and emotional contact with both . . . parents." *In re Marriage of Thielges*, 623 N.W.2d 232, 239 (Iowa Ct. App. 2000). We affirm the five-week summer visitation provision in favor of Shimp.

## III. Child Support

The district court ordered Shimp to pay Happel $476 per month in child support. Happel argues the court incorrectly assigned Shimp annual income of $36,000 per year rather than $38,000 per year and inappropriately assigned him annual income of $100,000 per year rather than $60,000 per year. In light of our modification of the midweek visitation provision of the decree, we remand for recalculation of child support, at which time the parties may revisit the underlying income figures.

## IV. Prioritization of Extracurricular Activities Over Parental Time

Happel argues "the conflicting statements in the district court's modified order causes confusion as to whether the parties are expected to support the extra-curricular activities of the children." He seeks the addition of the following language:

> The school, sports, drama, musical, and other extracurricular activities of the children shall be paramount over the parental time of a given parent. If the child is with a parent or [is] scheduled to be with a parent at the time of such an activity, he/she will cooperate in providing transportation and allow the child to attend the activity.

The district court addressed the issue as follows:

[Happel] asked the court to include language requiring the parties to endeavor in allowing the children to participate in scholastic and extracurricular activities, but further requests the decree place extracurricular activities of the children to be paramount over the parental time of a given parent. The court declines to do so at this time. As indicated, the court finds [Happel], if given the opportunity, would have the children involved in extracurricular activities seven days a week. The language would then thus require [Shimp] now within her parental time to be required to sacrifice her parental time to that of the extracurricular activities of potentially three different activities at the same time.

The court acted equitably in refusing to include the requested language. We discern no basis for prioritizing the children's large number of extracurricular activities over Shimp's parenting time.

## V. *Attorney Fees*

Shimp seeks an award of appellate attorney fees. An award rests in our discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). Given the disparity in the parties' incomes and the fact that Shimp prevailed on her request for mid-week visitation, we order Happel to pay $3000 toward her appellate attorney-fee obligation.[2]

**AFFIRMED AS MODIFIED IN PART ON APPEAL; AFFIRMED AS MODIFIED ON CROSS-APPEAL; AND REMANDED.**

---

[2] Happel filed a motion for limited remand to address an upcoming issue relating to vacation. In light of our disposition of the other issues and the remand accompanying the opinion, we find it unnecessary to address the motion.